Nos. 117,518
117,519

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

SHELBY MONTGOMERY and SCOTT E. BENNETT,
*Appellants/Cross-appellees*,

v.

PATRICK R. SALEH,

and

STATE OF KANSAS,
*Appellees/Cross-appellants*.

SYLLABUS BY THE COURT

1.

In an appeal from the district court's ruling on a summary judgment motion, the appellate court considers the motion de novo and applies the same standards which the district court applied.

2.

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. K.S.A. 2016 Supp. 60-256(c)(2).

3.

Any court considering a summary judgment motion must resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party

1

against whom the summary judgment motion is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. The court must deny a motion for summary judgment if reasonable minds could differ as to the conclusions drawn from the evidence.

4.

In actions based on negligence, summary judgment should be granted with caution.

5.

Summary judgment for a defendant is proper when a plaintiff fails to establish a prima facie case. Evidence sufficient for a prima facie case is that evidence which, if left unexplained or uncontradicted, would be sufficient to carry the case to the jury and sustain a verdict in favor of the plaintiff on the issue it supports.

6.

A plaintiff must establish the existence of a legal duty as part of a prima facie case of negligence. A legal duty must be specific as to a particular individual and not simply a duty to the public at large.

7.

The public duty doctrine expresses the general rule that absent a special duty, law enforcement duties are owed to the public at large and not to any specific person.

8.

K.S.A. 8-1506 excuses drivers of authorized emergency vehicles from following traffic laws under certain conditions. But K.S.A. 8-1506(d) provides: "The foregoing provisions shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of reckless disregard for the safety of others." This provision applies to a law enforcement officer's pursuit of a fleeing suspect. The plain language of K.S.A. 8-1506 creates a duty under which law enforcement can be held liable for injuries sustained by third parties in the course of a police chase. The officer's duty to "drive with due regard for the safety of all others" includes the officer's manner of operating the officer's vehicle, the decision to initiate the pursuit, and the decision to continue to pursue the suspect. K.S.A. 8-1506. If an officer is reckless in any of these aspects, then the officer may be held liable for injuries caused or contributed to by the officer's reckless conduct.

9.

Whether there is a causal connection between the breach of a duty and the injuries sustained is a question of fact.

10.

Proximate cause includes two concepts: causation-in-fact and legal causation. To prove causation-in-fact, a plaintiff must prove a cause-and-effect relationship between a defendant's conduct and the plaintiff's loss by presenting sufficient evidence from which a jury could conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred. Legal causation considers whether it is foreseeable that the defendant's conduct might create a risk of harm to the victim and that the result of that conduct and contributing causes were foreseeable. Proximate cause is a

question of fact unless all of the evidence on which a party relies is undisputed and susceptible of only one inference.

11.

Causation, like any other fact question, may be shown by circumstantial evidence. At the summary judgment stage, courts view the available circumstantial evidence in the light favoring the nonmoving party. In order for circumstantial evidence to be sufficient to sustain a factual finding in a civil case, the evidence need not rise to that degree of certainty which will exclude any and every other reasonable conclusion. Rather, the evidence is sufficient if it affords a basis for a reasonable inference by the fact-finder, even if some other equally reasonable inference might be drawn from the evidence.

12.

The Kansas Tort Claims Act provides that "each governmental entity shall be liable for damages caused by the negligent or wrongful act or omission of any of its employees while acting within the scope of their employment." K.S.A. 2016 Supp. 75-6103(a). Under the KTCA, governmental liability is the rule and immunity is the exception. The KTCA provides numerous exceptions to liability which are set forth in K.S.A. 2016 Supp. 75-6104. The burden is on the governmental entity to establish immunity under one of these statutory exceptions. Any doubt is resolved against the exception.

13.

A law enforcement officer's decision to pursue a fleeing suspect does not fall within the discretionary function exception found in K.S.A. 2016 Supp. 75-6104(e). A discretionary function must involve some element of policy formulation.

14.

A law enforcement officer's pursuit of a fleeing suspect does not fall within the "method of providing police protection" exception found in K.S.A. 2016 Supp. 75-6104(n). This exception does not apply to questions of negligence on the part of individual officers in carrying out their duty to protect individual members of the public.

15.

A statute imposing a legal duty, such as found in K.S.A. 8-1506(d), which requires the driver of an authorized emergency vehicle when pursuing a suspect to "drive with due regard for the safety of all persons," precludes the government and its officials from claiming immunity under the Kansas Tort Claims Act.

Appeal from Shawnee District Court; FRANKLIN R. THEIS, judge. Opinion filed March 30, 2018. Affirmed in part, reversed in part, and remanded.

*Richard L. Budden* and *Lynn R. Johnson*, of Shamberg, Johnson & Bergman, Chtd., of Kansas City, Missouri, for appellants/cross-appellees.

*Rachael D. Longhofer*, assistant attorney general, and *Derek Schmidt*, attorney general, for appellees/cross-appellants.

Before MCANANY, P.J., GARDNER, J., and TIMOTHY L. DUPREE, District Judge, assigned.

MCANANY, J.:  Scott E. Bennett and Shelby Montgomery brought these consolidated negligence actions against Kansas Highway Patrol Trooper Patrick R. Saleh and the State of Kansas for the injuries and damages they sustained as a result of a collision with a vehicle being driven by fleeing suspect Robert Horton who was being pursued by Trooper Saleh. The district court's entry of summary judgment in favor of Trooper Saleh and the State of Kansas brings the matter to us for our de novo review. The

defendants cross-appeal on a number of issues raised in the district court. Because we consider the defendants' summary judgment motion de novo, we need not concern ourselves with the holding of the district court and will address the issues in the cross-appeal in ruling de novo on the defendants' summary judgment motion.

Based upon our review of the record and being ever mindful of our fundamental policy of preserving for resolution by the jury disputed issues of fact, we conclude that there remain genuine issues of material fact regarding the claims of fault against Trooper Saleh, and vicariously against the State, which must await trial. Summary judgment is not appropriate on these claims. But with respect to the separate claims of direct negligence against the State, it is apparent that there is no genuine issue of material fact and the plaintiffs have abandoned them. Accordingly, the State is entitled to judgment as a matter of law on those claims.

THE PLAINTIFFS' CLAIMS

The plaintiffs commenced separate actions against Trooper Saleh and the State of Kansas. They claim that Trooper Saleh initiated and continued a high-speed chase in reckless disregard for the safety of others, without a valid and legal reason for initiating and continuing pursuit, and in violation of the Kansas Highway Patrol's pursuit policy and procedure.

In their separate action against the State of Kansas, the plaintiffs claim the State is vicariously liable for Trooper Saleh's actions and that the Kansas Highway Patrol and Troop K of the Kansas Highway Patrol/Capitol Police negligently failed to establish and enforce appropriate pursuit policies and procedures. In addition, they assert that the Kansas Highway Patrol was negligent in its hiring, retention, supervision, education,

training, and instruction of Trooper Saleh. These separate suits were consolidated for discovery purposes.

## SUMMARY JUDGMENT

After discovery was complete, the defendants moved for summary judgment. They claim (1) the plaintiffs fail to establish a prima facie case; (2) the defendants are entitled to immunity under the Kansas Tort Claims Act (KTCA); (3) the defendants fail to state a claim that the State negligently failed to establish and enforce appropriate pursuit policies and procedures; and (4) as a matter of law the State was not negligent in its hiring, retention, supervision, education, training, and instruction of Trooper Saleh.

*Uncontroverted Facts*

The uncontroverted facts disclose that on the evening of August 23, 2010, Kansas Highway Patrol Sergeant Tim Tillman was stopped at a red light at the intersection of Topeka Boulevard and 32nd Terrace in Topeka. He stopped next to a red Toyota also travelling northbound on Topeka Boulevard. He observed the front passenger holding a knife and speaking to the Toyota's driver. He could not hear their conversation. When the light turned green and the Toyota began to drive away, Sergeant Tillman saw the Toyota passenger swing the knife toward the driver, but he did not know whether the Toyota passenger was being physically aggressive or merely fooling around. (After the crash, no knife was found in the vehicle.) Sergeant Tillman reported the Toyota's license plate to dispatch and was informed that the plate number belonged to a 1992 Oldsmobile.

Because he was in plain clothes and driving an unmarked vehicle, Sergeant Tillman requested that Trooper Terry Fields and Trooper Saleh, who were in the area of 10th Avenue and Topeka Boulevard, stop the Toyota. Troopers Saleh and Fields spotted

7

the Toyota near the intersection of Topeka Boulevard and 21st Street. Trooper Saleh took the lead. He activated his red lights, siren, and dashboard video camera which recorded the pursuit. The pursuit lasted approximately 1 minute and 32 seconds.

After Trooper Saleh activated his emergency equipment, the driver of the Toyota turned right onto 20th Street, rapidly accelerated as he headed east, and ran a stop sign as he was turning right onto Kansas Avenue, where he proceeded south. Trooper Saleh continued pursuing the vehicle as it crossed the yellow line on Kansas Avenue and weaved across the southbound lanes.

Trooper Saleh accelerated to 80 to 90 miles per hour, but he estimated that the Toyota was travelling in excess of 100 miles per hour. He decided to terminate pursuit "'[s]omewhere around the Wonder Bread outlet store'" which was located between 27th Street and 29th Street on Kansas Avenue. But he did not actually terminate his pursuit at any point before the Toyota sped through a red traffic light at the intersection of Kansas Avenue and 29th Street and collided with the Chevy pickup truck occupied by plaintiffs Bennett and Montgomery. At the time of the collision, Trooper Saleh was about two and a half blocks behind the Toyota. The impact caused the Chevy pickup truck to spin into several other vehicles. The driver of the Toyota was later confirmed to be Horton, and his passenger was a minor female who had been reported as a runaway by her foster mother.

Throughout the course of these events, Trooper Saleh was acting within the scope and course of his employment with the State of Kansas.

The defendants' expert, Special Agent Kenneth R. Wallentine, a Utah law enforcement officer, opined that Trooper Saleh's pursuit was reasonable and consistent with generally accepted policies, practices, and training. He concluded:

8

"Though plaintiff's expert speculates that termination of the pursuit fractions of a moment sooner might conceivably prompted Horton to cease his unlawful flight, experience and reason suggests otherwise. Police officers deal in facts known or reasonably believed. They don't have the luxury of acting on academic guesses of what might happen if an offender acts true to one theory of behavior."

*Defendants' Contentions*

The defendants contend:

- *Duty and breach*:  Plaintiffs cannot establish the duty and breach elements of their claims because Trooper Saleh's duty to "'maintain public order or make arrests for crimes'" superseded his duty to operate his emergency vehicle with due regard for the safety of all persons under K.S.A. 8-1506. Further, the plaintiffs cannot provide sufficient evidence to support their claim that Trooper Saleh acted with a conscious and unjustifiable disregard of the danger the pursuit caused for other motorists.
- *Proximate cause*:  The fleeing suspect was the only proximate cause of plaintiffs' injuries.
- *KTCA Immunity*: The defendants are entitled to immunity under various provisions of the KTCA.

Futhermore, the defendants allege that the plaintiffs did not present evidence supporting their claim that the State of Kansas negligently failed to establish and enforce appropriate pursuit policies and procedures and in its hiring, retention, supervision, education, training, and instruction of Trooper Saleh.

9

*Plaintiffs' Contentions*

In response to the defendants' summary judgment motion, the plaintiffs submitted the affidavit of expert criminologist Geoffrey Alpert, Ph.D., who opined that Trooper Saleh's pursuit became futile once the Toyota ran the stop sign on 20th Street because it was more likely than not that the driver would continue to flee as long as he was being chased. In his opinion, "the pursuit should have been terminated between 20th and 21st street and no later than when [Horton] ran the red light at 21st street in an attempt to elude the police." According to Alpert, "[h]ad the police terminated their active attempt to apprehend [Horton], it is more likely than not that he would not have crashed into the pick-up driven by [Bennett] at 29th." Alpert concluded that Trooper Saleh's continued pursuit of Horton was a proximate cause of the crash.

The plaintiffs argued that "had Trooper Saleh terminated his pursuit once he became aware that it was unjustified in light of the dangers presented, the Toyota would not have crashed into Plaintiffs' vehicle and caused Plaintiffs' injuries." In support, the plaintiffs note:

- The Toyota had been traveling 100 miles per hour for several blocks during the police chase.
- The Toyota would have slowed down enough to avoid the collision if Trooper Saleh had properly terminated the chase once it became futile.
- It was evident that the chase was futile because rather than stopping, the Toyota ran through a stop sign, weaved across lanes, accelerated through a red stop light, and reached speeds in excess of 100 miles per hour.

The plaintiffs assert that a reasonable jury could have found that Horton would have slowed through the intersection at 29th Street and Kansas Avenue if Trooper Saleh

10

had terminated pursuit. Likewise, they assert a reasonable jury could find Horton's collision with plaintiffs' vehicle was foreseeable to Trooper Saleh because he had watched a near-miss when Horton sped through the stoplight at 21st Street and Kansas Avenue.

The plaintiffs noted that K.S.A. 8-1506(a)-(c) grants drivers of an authorized emergency vehicle privileges that excuse them from following traffic laws under certain conditions. But subsection (d) provides: "The foregoing provisions shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of reckless disregard for the safety of others." K.S.A. 8-1506(d). They also presented evidence of the Kansas Highway Patrol's policy regarding when to initiate and reevaluate a pursuit. The policy, known as OPS-16, states:

> "Officers are expected to make a diligent and reasonable effort to stop all suspected or actual violators. The decision to initiate pursuit must be based on the pursuing officer's conclusion that the immediate danger to the officer and the public created by the pursuit is less than the immediate or potential danger to the public should the suspect remain at large."

OPS-16 identifies the following factors to take into consideration when deciding to initiate a pursuit:

> "a. nature and seriousness of violation;
> "b. road, weather and environmental conditions;
> "c. population density and presence of vehicular/pedestrian traffic;
> "d. officer's familiarity with area;
> "e. patrol vehicle condition;
> "f. alternative methods of apprehension;
> "g. likelihood of successful apprehension;

11

"h. mutual aid agreements with city and county authorities."

OPS-16 further provides: "The primary pursuing unit shall continually re-evaluate and assess the pursuit situation including all of the initiating factors and terminate the pursuit whenever he or she reasonably believes the risks associated with continued pursuit are greater than the public safety benefit of making an immediate apprehension." The only provisions mandating termination of pursuit are (1) when there is an equipment failure or (2) when the pursuing officer knows or is reasonably certain that the fleeing vehicle is operated by a juvenile and the underlying offense is not a serious felony.

DISCUSSION

*Review Standards*

In an appeal from the district court's ruling on a summary judgment motion, we consider the motion de novo and apply the same standards which the district court applied. *Osterhaus v. Toth*, 291 Kan. 759, 768, 249 P.3d 888 (2011). Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. K.S.A. 2016 Supp. 60-256(c)(2). Any court considering the motion must resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the summary judgment motion is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. The court must deny a motion for summary judgment if reasonable minds could differ as to the conclusions

12

drawn from the evidence. See *Armstrong v. Bromley Quarry & Asphalt, Inc.*, 305 Kan. 16, 24, 378 P.3d 1090 (2016).

In actions based on negligence, summary judgment should be granted with caution. *Apodaca v. Willmore*, 306 Kan. 103, 106, 392 P.3d 529 (2017); *Fettke v. City of Wichita*, 264 Kan. 629, 632, 957 P.2d 409 (1998). Summary judgment is proper when a plaintiff fails to establish a prima facie case. *Robbins v. City of Wichita*, 285 Kan. 455, 470, 172 P.3d 1187 (2007). "Evidence sufficient for a prima facie case is that 'evidence which, if left unexplained or uncontradicted, would be sufficient to carry the case to the jury and sustain a verdict in favor of the plaintiff on the issue it supports.' [Citation omitted.]" 285 Kan. at 470.

The well-known essential elements of an action sounding in tort are duty, breach, causation, and damages. Summary judgment is appropriate if the defendant can establish the absence of evidence necessary to support an essential element of a plaintiff's case. *Kuxhausen v. Tillman Partners*, 291 Kan. 314, 318, 241 P.3d 75 (2010). When a plaintiff lacks evidence to establish an essential element of a claim, there can be no genuine issue of material fact because the complete failure of proof concerning an essential element of the plaintiff's case renders all other facts immaterial. *Crooks v. Greene*, 12 Kan. App. 2d 62, 64-65, 736 P.2d 78 (1987). Accordingly, we will examine each of these essential elements of a tort action.

*Duty*

A plaintiff must establish the existence of a legal duty as part of a prima facie case of negligence. *South v. McCarter*, 280 Kan. 85, 94, 119 P.3d 1 (2005). Whether a duty exists is a question of law over which our review is unlimited. *Sall v. T's, Inc.*, 281 Kan. 1355, 1360, 136 P.3d 471 (2006). In order for a duty to exist, it must be specific as to a

particular individual and not the general public. *Robertson v. City of Topeka*, 231 Kan. 358, 363, 644 P.2d 458 (1982).

The defendants assert that the public duty doctrine bars the plaintiffs' claims because Trooper Saleh owed no special duty to the plaintiffs. The public duty doctrine "expresses a general rule that law enforcement duties are owed to the public at large and not to any specific person." *Conner v. Janes*, 267 Kan. 427, 429, 981 P.2d 1169 (1999).

> "When a negligence claim is asserted against a governmental agency, the court must consider the so-called 'public duty doctrine.' That doctrine establishes the general principle that a governmental agency owes duties to the public at large rather than to individuals. Under this doctrine, the fact the governmental entity owes a legal duty to the public at large does not establish a basis for an individual to claim the agency owed a legal duty to the individual personally. No duty exists unless it is established that the agency owed a special duty to the injured party." *Kirk v. City of Shawnee*, 27 Kan. App. 2d 946, Syl. ¶ 3, 10 P.3d 27 (2000).

But a special duty may exist between a governmental agency and an injured person, rendering the public duty doctrine inapplicable to their encounter. This exception occurs when:

> "(1) a special relationship existed between the governmental agency and the wrongdoer (*i.e.,* the wrongdoer was in the State's custody or care); (2) a special relationship existed between the governmental agency and the injured person (*i.e.,* the injured person was in the State's custody or care); or (3) the government agency performed an affirmative act that caused injury or made a specific promise or representation that under the circumstances created a justifiable reliance on the part of the person injured. [Citation omitted.]" *Potts v. Board of Leavenworth County Comm'rs*, 39 Kan. App. 2d 71, 81, 176 P.3d 988 (2008).

14

The plaintiffs do not rely on any of these exceptions. Rather, they point to the language of K.S.A. 8-1506 and assert that this statute creates a specific duty owed to them.

Kansas courts have applied the public duty doctrine to the actions of law enforcement. *Kirk*, 27 Kan. App. 2d at 951. In *Robertson*, the Kansas Supreme Court found that a law enforcement officer's duty to preserve the peace is one owed to the public at large. 231 Kan. 358, Syl. ¶ 2. In *Lamb v. State*, 33 Kan. App. 2d 843, 844-45, 109 P.3d 1265 (2005), a plaintiff law enforcement officer sued the State of Kansas and a Kansas Highway Patrol trooper after a fleeing suspect was pursued and the trooper pulled his vehicle over and left it running with the door open. The suspect jumped into the vehicle, as did the trooper, and a struggle ensued to gain control of the vehicle. The vehicle lurched forward and struck the plaintiff officer. The plaintiff asserted that a statutory duty was owed under K.S.A. 8-1573, which prohibits one from leaving a vehicle running while unattended, but the court concluded that such a duty was owed to the public at large rather than the individual law enforcement officer. 33 Kan. App. 2d at 847, 849.

The defendants argue that *Lamb* supports their position that when a statute is broadly written, the duty is to the public and not to an individual person. They also point to Missouri caselaw for support that the public duty doctrine applies even when a state statute specifically exempts negligent operation of a vehicle within the scope of a government employee's employment. The Missouri cases hold that an officer's individual liability is protected by the public duty doctrine because his "police pursuit conduct arose from his duties owed to the public generally." *Southers v. City of Farmington*, 263 S.W.3d 603, 620 (Mo. 2008); *Throneberry v. Missouri State Highway Patrol*, 526 S.W.3d 198, 205-06 (Mo. Ct. App. 2017) (finding the public duty doctrine applicable to trooper's pursuit when no foreseeable injury to specific individuals).

15

Resolution of this issue requires us to interpret K.S.A. 8-1506, which is an issue of law over which we have unlimited review. *Neighbor v. Westar Energy, Inc.*, 301 Kan. 916, 918, 349 P.3d 469 (2015). The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. *State ex rel. Schmidt v. City of Wichita*, 303 Kan. 650, 659, 367 P.3d 282 (2016). We must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. *Ullery v. Othick*, 304 Kan. 405, 409, 372 P.3d 1135 (2016). When a statute is plain and unambiguous, we should not speculate about the legislative intent behind that clear language, and we should refrain from reading something into the statute that is not readily found in its words. 304 Kan. at 409.

The defendants' argument that the public duty doctrine applies to law enforcement pursuits is untenable in light of our Supreme Court's holding in *Robbins*. K.S.A. 8-1506 requires that a driver of an emergency vehicle "drive with due regard for the safety of all persons." K.S.A. 8-1506(a)-(c) grants drivers of an authorized emergency vehicle privileges that excuse them from following traffic laws under certain conditions. In conjunction with these privileges, subsection (d) provides: "The foregoing provisions shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of reckless disregard for the safety of others." K.S.A. 8-1506(d). The defendants' argument, if successful, would render K.S.A. 8-1506(d) entirely meaningless.

In *Robbins*, our Supreme Court held that K.S.A. 8-1506(d) created a duty for law enforcement officers in pursuit of a fleeing vehicle to "drive with due regard for the safety of all persons." 285 Kan. at 465. Previously, the court had limited this duty to the police officer's physical operation of the emergency vehicle. See *Thornton v. Shore*, 233

16

Kan. 737, 666 P.2d 655 (1983). But in *Robbins*, the court specifically expanded the duty from the physical act of driving to include the police officer's decision to pursue and to continue the pursuit. 285 Kan. at 465-66.

The *Robbins* court made it clear that the officer in that police pursuit chase owed a duty to the injured party. 285 Kan. at 470. It is apparent that the *Robbins* court interpreted the statute's reference to a duty to "all persons" as inclusive of a duty owed to a specific individual. 285 Kan. 455, Syl. ¶ 3.

K.S.A. 8-1506, which sets forth a specific duty owed to "all persons," is not a general duty to preserve the peace, as discussed in *Robertson*. Likewise, the language in K.S.A. 8-1506 is distinct from the language in K.S.A. 8-1573 (as discussed in *Lamb*) and K.S.A. 74-2105(a), neither of which specifically reference a legal duty or the persons to whom it is owed. This interpretation is consistent with *Robbins* and with the Legislature's intent to protect individuals who may be injured by officers who drive with reckless disregard for the safety of others. The plain language of K.S.A. 8-1506 creates a duty under which law enforcement can be held liable for police pursuits. *Robbins*, 285 Kan. 455, Syl. ¶ 3.

As a matter of law, the facts asserted by the plaintiffs establish a duty, the first element of their tort action against Trooper Saleh and, vicariously, against the State.

*Breach of Duty*

Our next task is to determine whether there are genuine issues of fact to be resolved at trial as to whether Trooper Saleh breached his duty. Whether a duty exists is a

17

question of law. But whether the duty has been breached is a question of fact generally reserved for the jury. *South*, 280 Kan. at 94.

*Robbins* is our Supreme Court's most recent pronouncement in a case such as this. The court in *Robbins* overruled its prior decision in *Thornton v. Shore*. In *Robbins*, the Wichita police department received a 911 call that Drechsler was causing a domestic disturbance. When the officer was en route to the home, Drechsler broke through the door of the home with an ax and began chasing his wife with the ax. Drechsler pinned his wife on a bed and held the ax over her head before letting her go and returning to the garage where he broke the windows of her car.

While the officer was approaching the house, Drechsler got in his truck and left. Officer Woodward began pursuing Drechsler with his lights and sirens activated. The officer continued pursuit even after Drechsler ran a red light. Eventually, Drechsler broadsided a car driven by Robbins, who died as a result. Robbins' husband filed a wrongful death action, alleging negligence in the pursuit.

The *Robbins* court established the reckless disregard standard of care for determining whether the officer breached his duty in a police pursuit. Reckless disregard in this context consists of "driving a vehicle under circumstances that show a realization of the imminence of danger to another person or the property of another where there is a conscious and unjustifiable disregard of that danger." 285 Kan. 455, Syl. ¶ 6. In applying this standard the court determined that the officer's duty to "drive with due regard for the safety of all others" included the officer's manner of operating his own vehicle, the decision to initiate the pursuit, and the decision to continue to pursue the suspect. 285 Kan. 455, Syl. ¶ 5. If an officer is reckless in any of these aspects, then the officer may be held liable for injuries caused or contributed to by the officer's reckless conduct.

18

The *Robbins* court did not reach the issue of causation because "there is not sufficient evidence to support a prima facie finding that the officers had a conscious and unjustifiable disregard of the danger the pursuit caused for other motorists." 285 Kan. at 470. This conclusion was based on the fact that "the officers were confronted with a drunken, violent, ax-wielding, fleeing offender whose very presence put whomever he encountered at serious risk of bodily injury." 285 Kan. at 470. But similarly dire circumstances did not confront Trooper Saleh when he took up the pursuit of the Toyota in our present case. Trooper Saleh's conduct under the facts of our present case cannot be characterized as a matter of law as satisfying the standard of care stated in *Robbins*. While the appropriate standard of care is an issue of law for the court, whether that standard has been breached, particularly in the context of tort litigation, generally should be left to the fact-finder at trial.

The first consideration under Kansas Highway Patrol Pursuit Policy OPS-16 in deciding to initiate a pursuit is the nature and seriousness of the perceived violation. OPS-16 requires that initiating a pursuit "must be based on the pursuing officer's conclusion that the immediate danger to the officer and the public created by the pursuit is less than the immediate or potential danger to the public should the suspect remain at large."

Here, Horton was not observed before the chase engaging in any conduct that would cause Trooper Saleh to reasonably conclude that the immediate danger to the public created by the pursuit would be less than the immediate or potential danger to the public should Horton remain at large. Trooper Saleh's chase was not precipitated by reckless driving which, if unchecked, would create the possibility—much less the probability—that the suspect's conduct would end in serious injury or death to others on the roadway. There was no suspicion that the driver was intoxicated, thereby putting other motorists at risk. A jury could conclude that the nature of Horton's perceived

19

violation, driving an automobile with an improper tag, was not so serious as to override the potential danger to the public resulting from the chase. There is no indication that Horton caused a risk to society such as described by our Supreme Court in *Robbins*, in which the court observed that "the officers were confronted with a drunken, violent, ax-wielding, fleeing offender whose very presence put whomever he encountered at serious risk of bodily injury." 285 Kan. at 470. While it was reported to Trooper Saleh that the passenger in Horton's car was waving a knife, Trooper Saleh did not know if the driver was dangerous or posed an immediate threat to others. The officer who observed the knife did not know whether the passenger was threatening the driver or just fooling around.

Further, OPS-16 requires the officer to terminate pursuit when the officer reasonably believes the risks associated with continued pursuit are greater than the public safety benefit of making an immediate apprehension.

Here, there is evidence from which a jury could conclude that Trooper Saleh realized the imminence of danger during the chase. He recognized that Horton ignored the stop sign on 20th Street, and he verbalized on his dashboard video that he anticipated that Horton would run the red light at 21st Street. Before Horton reached the light, Trooper Saleh saw him cross the yellow line and switch lanes multiple times without signaling. As Horton went through the red light at 21st Street, two vehicles were approaching the intersection, one eastbound and one westbound. Both of those vehicles had a green light to enter the intersection. At this moment, it can be inferred that Trooper Saleh understood the imminent danger to other drivers in Horton's path.

Despite Trooper Saleh's realization of the imminent danger, there is evidence from which a jury could find that he showed a conscious and unjustifiable disregard of the danger when he chose to continue the pursuit through the streets of Topeka. Kansas

20

Highway Patrol Policy OPS-16 requires termination of the pursuit when the risks associated with the continuing pursuit outweigh the public safety benefit of immediately apprehending the fleeing vehicle. The weighing of competing risks is a matter we traditionally leave for the fact-finder at trial to resolve. After Horton ran the red light, Trooper Saleh believed Horton's speed was in excess of 100 miles per hour, yet he continued active pursuit at speeds of 80 to 90 miles per hour. Trooper Saleh admitted that he did not believe that his attempt to stop the Toyota was going to be productive. Horton continued to cross the yellow line and weave in and out of traffic, but Trooper Saleh did not terminate his pursuit. The plaintiffs assert this continued pursuit showed a conscious disregard of the danger to others.

Trooper Saleh had no reason to believe there was any immediate danger that would require him to continue to chase the Toyota. Balancing the fact that Horton was driving a vehicle with an improper license plate against the risk of harm from Horton's reckless speeding through the streets of Topeka once the chase began, a jury could reasonably conclude that Trooper Saleh breached the standard of care in not breaking off his pursuit. Resolving all facts and inferences in favor of the plaintiffs, a reasonable jury could find a breach of the reckless disregard standard of care.

*Causation*

The next issue is whether there is evidence that Trooper Saleh's conduct, if proven to have fallen short of the applicable standard of care, caused or contributed to cause the plaintiffs' injuries and damages. The general rule in Kansas is found in *Yount v. Deibert*, 282 Kan. 619, 623-24, 147 P.3d 1065 (2006): "Whether there is a causal connection between the breached duty and the injuries sustained is a question of fact. [Citation omitted.]"

21

Proximate cause includes two concepts: causation-in-fact and legal causation. As stated in *Puckett v. Mt. Carmel Regional Med. Center*, 290 Kan. 406, 420, 228 P.3d 1048 (2010): "To prove causation in fact, a plaintiff must prove a cause-and-effect relationship between a defendant's conduct and the plaintiff's loss by presenting sufficient evidence from which a jury could conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred. [Citations omitted.]" Legal causation contemplates whether "it was foreseeable that the defendant's conduct might create a risk of harm to the victim and that the result of that conduct and contributing causes were foreseeable. [Citation omitted.]" 290 Kan. at 421. Proximate cause is a question of fact for the jury unless all of the evidence on which a party relies is undisputed and susceptible of only one inference. *Hale v. Brown*, 287 Kan. 320, 324, 197 P.3d 438 (2008).

The defendants argue that the plaintiffs' evidence on causation is conclusory and speculative. Kansas courts have refused to find negligence when, in cases not involving police chases, its cause is based on impermissible speculation and conjecture. See *Wasson v. Brewer's Food Mart, Inc.*, 7 Kan. App. 2d 259, 265, 640 P.2d 352 (1982).

*Carl v. City of Overland Park*, 65 F.3d 866, 874 (10th Cir. 1995), a case decided prior to *Robbins*, represents an outlier from the modern trend for dealing with the causation issue in police chase cases. There, the Tenth Circuit, relying on *Thornton*, found that under the particular facts of the case the fleeing suspect's conduct was the sole proximate cause of the accident as a matter of law. The court noted, however, that in more "extreme circumstances, a Kansas court might come out differently on the question of proximate cause." *Carl*, 65 F.3d at 874. In the dissent, Judge Bright noted the "modern trend of police chase cases leaves the proximate cause issue to the jury." 65 F.3d at 875 (Bright, J., dissenting).

22

"In the majority of jurisdictions, proximate cause is considered to be a question of fact when the plaintiff alleges negligence on the part of police in commencing or continuing pursuit. *Haynes v. Hamilton County*, 883 S.W.2d 606, 612 (Tenn. 1994) (providing numerous citations to other jurisdictions). In *Haynes*, the Tennessee Supreme Court reversed an earlier ruling in *Nevill v. City of Tullahoma*, 756 S.W.2d 226 (1988). The Court noted that New York and Florida had also reconsidered the issue and adopted the emerging majority view. *Haynes*, at 612." *Carl*, 65 F.3d at 875.

The cases cited in *Haynes*, which recognize that causation in a police chase case is a question of fact for the jury, are *Biscoe v. Arlington County*, 738 F.2d 1352 (D.C. Cir.1984) (applying D.C. law); *Myers v. Town of Harrison*, 438 F.2d 293 (2d Cir.1971) (applying New York law); *Schatz v. Cutler*, 395 F. Supp. 271 (D. Vt. 1975); *Seals v. City of Columbia*, 575 So. 2d 1061 (Ala. 1991); *Estate of Aten v. City of Tucson*, 169 Ariz. 147, 817 P.2d 951 (Ct. App. 1991); *Stark v. City of Los Angeles*, 168 Cal. App. 3d 276, 214 Cal. Rptr. 216 (1985); *Tetro v. Stratford*, 189 Conn. 601, 458 A.2d 5 (1983); *City of Pinellas Park v. Brown*, 604 So. 2d 1222 (Fla. 1992); *Mixon v. City of Warner Robins*, 264 Ga. 385, 444 S.E.2d 761 (1994); *Boyer v. State*, 323 Md. 558, 594 A.2d 121 (1991); *Fiser v. Ann Arbor*, 417 Mich. 461, 339 N.W.2d 413 (1983); *Smith v. City of West Point*, 475 So. 2d 816 (Miss. 1985); *Lee v. City of Omaha*, 209 Neb. 345, 307 N.W.2d 800 (1981); *Bullins v. Schmidt*, 322 N.C. 580, 369 S.E.2d 601 (1988); *Jones v. Ahlberg*, 489 N.W.2d 576 (N.D. 1992); *Selkowitz v. Nassau County*, 45 N.Y.2d 97, 408 N.Y.S.2d 10, 379 N.E.2d 1140 (1978); *Lowrimore v. Dimmitt*, 310 Or. 291, 797 P.2d 1027 (1990); *Travis v. City of Mesquite*, 830 S.W.2d 94 (Tex. 1992); *Colby v. Boyden*, 241 Va. 125, 400 S.E.2d 184 (1991); *Mason v. Bitton*, 85 Wash. 2d 321, 534 P.2d 1360 (1975); *Peak v. Ratliff*, 185 W. Va. 548, 408 S.E.2d 300 (1991); *DeWald v. State*, 719 P.2d 643 (Wyo. 1986).

See *Estate of Aten v. City of Tucson*, 169 Ariz. at 148 (the issue of causation in a police pursuit case is one for the fact-finder to decide); *City of Pinellas Park v. Brown*,

604 So. 2d at 1228 ("Experience and foresight support the conclusion that [the fleeing driver] engaged in such reckless conduct primarily because he was being chased by police, and that this misconduct would have ceased had the police discontinued the pursuit. There is nothing extraordinary in this conclusion."); *City of Jackson v. Thornton*, 94 So. 3d 1186, 1195 (Miss. Ct. App. 2011) ("We cannot say that [the fleeing suspect] would have been travelling at such high speeds and driving in such an erratic manner had [the police] not been chasing him."); *Meyer v. State*, 264 Neb. 545, 650 N.W.2d 459 (2002) (if pursuit caused the fleeing suspect to drive the van in an attempt to elude apprehension, then it is a proximate cause of the accident); *Argabrite v. Neer*, 149 Ohio St. 3d 349, 352, 75 N.E.2d 161 (2016) (overruling a previous case holding that a pursuing officer could not be a proximate cause); *Oklahoma v. Gurich*, 238 P.3d 1 (Okla. 2010) (denying defendant summary judgment on causation, explaining that the court cannot say there was no evidence from which a jury could find a causal nexus between the trooper's decision to pursue and continue to pursue a fleeing driver and the accident).

An example of cases representing the minority view on this causation issue is *Stanley v. City of Independence*, 995 S.W.2d 485 (Mo. 1999), cited by the defendants. But the Missouri Supreme Court noted that other states, faced with similar factual situations, had ruled differently. In fact, even the Missouri Court of Appeals in *Moyer v. St. Francois County Sheriff Dept.*, 449 S.W.3d 415, 418 (Mo. Ct. App. 2014), reversed the circuit court's summary judgment for the defendant in a police pursuit case, finding the jury could infer causation if the facts support it.

The plaintiffs' expert, criminologist Geoffrey Alpert, Ph.D., stated in an affidavit that Trooper Saleh's pursuit became futile once the Toyota ran the stop sign on 20th Street because it was more likely than not that the driver would continue to flee as long as he was being chased. He stated that "the pursuit should have been terminated between 20th and 21st street and no later than when [Horton] ran the red light at 21st street in an

24

attempt to elude the police." Alpert stated that if "the police [had] terminated their active attempt to apprehend [Horton], it is more likely than not that he would not have crashed into the pick-up driven by [plaintiff Bennett] at 29th."

The defendants assert Alpert's testimony is based on pure speculation, but much of their criticism is based on the weight of the evidence, which is to be considered and resolved by the fact-finder, not us. In order to avoid summary judgment, the opposing party must merely provide evidence creating a genuine issue of material fact, not dispel every other possible scenario that could be drawn from the facts. The dissent would resolve those facts against the nonmoving party at the summary judgment stage. Here, plaintiffs point to evidence creating a genuine issue of material of fact for the jury on the issue of causation. Moreover, the issues regarding Alpert's opinions are a bit of a red herring. Even without Alpert's expert opinion, which may or may not be helpful to the jury in applying its own common sense to the facts, there still remains an issue of fact on the issue of causation for the jury to resolve at trial.

According to Trooper Saleh's dashboard video camera, about 46 seconds passed from the time Alpert said Trooper Saleh should have terminated pursuit and the time of the crash. Alpert concluded that Trooper Saleh's continued pursuit of Horton was a proximate cause of the crash.

Had this been a case in which the suspect was already driving in a reckless manner or at a high rate of speed when the officer initiated the pursuit, we could hardly infer that such a suspect would mend his ways simply because the pursuing officer ended the chase. But here, Horton was not engaged in any reckless conduct before Trooper Saleh's pursuit began. It was the trooper's pursuit that prompted Horton to accelerate to such a dangerous speed and to ignore traffic signals and a stop sign. Had the pursuit ended before the scene of the crash, Horton would have had no incentive to continue at such a

break-neck speed and in such a reckless manner, risking his own life in the process. Whether, in fact, he would have is not for us to say. Our task is to view the evidence in the light favoring the plaintiffs to determine if one could reasonably infer that once the chase ended Horton would have changed his behavior accordingly.

The defendants point to the plaintiffs' lack of direct evidence of what Horton saw of the pursuing officer as he sped down Kansas Avenue. But the plaintiffs' claims are not fatally deficient because they lack direct evidence of what Horton saw of the pursuing officer before the accident. They can rely on circumstantial evidence. The defendants would have us view that evidence in the light that supports a conclusion that Horton would not have stopped even if Trooper Saleh broke off his pursuit. But at this stage in the proceedings we view the available circumstantial evidence in the light favoring the plaintiffs, which supports the reasonable inference—yet to be tested at trial—that had Trooper Saleh ended the chase, Horton probably would have slowed down and not collided with the plaintiffs' pickup truck.

Causation, like any other fact question, may be shown by circumstantial evidence. *American Family Mutual Ins. Co. v. Grim*, 201 Kan. 340, 344, 440 P.2d 621 (1968). In order for circumstantial evidence to be sufficient to sustain a factual finding in a civil case, the "evidence need not rise to that degree of certainty which will exclude any and every other reasonable conclusion. [Citations omitted.]" 201 Kan. at 343. Rather, the evidence is sufficient if it affords a basis for a reasonable inference by the fact-finder, even if some other inference equally reasonable might be drawn from the evidence. 201 Kan. at 343.

We end this discussion by restating the observation by the Florida Supreme Court in *City of Pinellas Park*, 604 So. 2d at 1228: "Experience and foresight support the conclusion that [the fleeing driver] engaged in such reckless conduct primarily because

26

he was being chased by police, and that this misconduct would have ceased had the police discontinued the pursuit. There is nothing extraordinary in this conclusion." Here, we find sufficient evidence to submit to a jury—the time-honored arbiter of such issues—whether the circumstantial evidence in this case supports a finding that Trooper Saleh contributed to causing the collision which resulted in the plaintiffs' injuries and damages.

*Damages*

The final element of an action in tort is damages. The instant summary judgment motion turns on issues of liability. The defendants make no claim that the plaintiffs did not suffer injuries and damages as a result of the collision. Accordingly, we need not address this element.

*Statutory Immunity*

Next, the defendants assert that notwithstanding the provisions of K.S.A. 8-1506, they are immune under the KTCA. This is an issue of law over which we have unlimited review. *Jarboe v. Board of Sedgwick County Comm'rs*, 262 Kan. 615, 938 P.2d 1293 (1997).

The KTCA provides that "each governmental entity shall be liable for damages caused by the negligent or wrongful act or omission of any of its employees while acting within the scope of their employment." K.S.A. 2016 Supp. 75-6103(a). "Under the KTCA, governmental liability is the rule and immunity is the exception. [Citation omitted.]" *Jackson v. U.S.D. 259*, 268 Kan. 319, 322, 995 P.2d 844 (2000). But the KTCA provides numerous exceptions to liability which are set forth in K.S.A. 2016 Supp. 75-6104. The burden is on the governmental entity to establish immunity under one of these exceptions. *Kansas State Bank & Tr. Co. v. Specialized Transportation*

27

*Services, Inc.*, 249 Kan. 348, 364, 819 P.2d 587 (1991). "[I]n construing a statute, any doubt should be resolved against the exception." *Farm Credit Bank of Wichita v. Zerr*, 22 Kan. App. 2d 247, 252, 915 P.2d 137 (1996).

The defendants argue that they are immune from liability because Trooper Saleh exercised his discretion in deciding to pursue Horton and, therefore, the discretionary function exception under K.S.A. 2016 Supp. 75-6104(e) applies.

Our Supreme Court has held that the mere exercise of judgment cannot be the test for the discretionary function exception because judgment is exercised in almost every human endeavor. *Kansas State Bank*, 249 Kan. at 365. "Rather, a discretionary function must involve some element of policy formulation." 249 Kan. at 365. Moreover, the discretionary function exception does not apply when a legal duty exists, either by caselaw or by statute, which the governmental agency is required to follow. *Nero v. Kansas State University*, 253 Kan. 567, 585, 861 P.2d 768 (1993); *Dougan v. Rossville Drainage Dist.*, 243 Kan. 315, 322, 757 P.2d 272 (1988). Here, that legal duty is contained in K.S.A. 8-1506(d), which required Trooper Saleh to exercise "due regard for the safety of all persons." The discretionary function exception does not apply.

Next, the defendants argue that they are immune from liability because Trooper Saleh's pursuit of Horton falls within the "method of providing police protection" exception under K.S.A. 2016 Supp. 75-6104(n). But K.S.A. 2016 Supp. 75-6104(n) does not apply in cases involving "questions of negligence on the part of individual officers in carrying out their duty to protect individual members of the public." *Watson v. City of Kansas City*, 857 F.2d 690, 698 (10th Cir. 1988). In *Jackson v. City of Kansas City*, 235 Kan. 278, 680 P.2d 877 (1984), *overruled on other grounds by Simmons v. Porter*, 298 Kan. 299, 312 P.3d 345 (2013), the court stated:

28

> "[A] city is immunized from such claims as a burglary could have been prevented if additional police cars had been on patrol, or a house could have been saved if more or better fire equipment had been purchased. . . . [But s]hould firemen negligently go to the wrong house and chop a hole in the roof thereof, we do not believe the city has immunity therefor on the basis the negligent act was a part of the method of fire protection."
> *Jackson,* 235 Kan. at 292.

Trooper Saleh and the State are not immune under the "method of police protection" exemption. See K.S.A. 2016 Supp. 75-6104(n).

Finally, it is clear that the KCTA itself does not apply in this case. In both *Schmidt v. HTG, Inc.*, 265 Kan. 372, 392, 961 P.2d 677, *cert. denied* 525 U.S. 964 (1998), and *Jarboe*, 262 Kan. 615, our Supreme Court held that a statute imposing a legal duty precludes the government and its officials from claiming immunity under the KTCA. Here, that statute is K.S.A. 8-1506(d), which requires the driver of an authorized emergency vehicle when pursuing a suspect to "drive with due regard for the safety of all persons." If the law permitted a grant of immunity under the KTCA in police pursuit cases, then the provision of K.S.A. 8-1506(d) which requires the officer to "drive with due regard for the safety of all persons" would be rendered totally meaningless. We presume that the Legislature did not intend to enact meaningless legislation when it enacted K.S.A. 8-1506(d). See *In re Marriage of Traster*, 301 Kan. 88, 98, 339 P.3d 778 (2014).

Moreover, because K.S.A. 8-1506(d) is more specific than the exemptions found in the KTCA, we conclude that K.S.A. 8-1506(d), the more specific statute, applies. To hold otherwise would mean that no police officer could ever be held liable for any pursuit resulting in an injury to a bystander, no matter how egregious and unjustifiable the pursuit.

29

*Direct Claims Against the State*

In addition to the claims against Trooper Saleh for which the State is claimed to be vicariously liable, the plaintiffs assert that the State, through the Kansas Highway Patrol and Troop K of the Kansas Highway Patrol/Capitol Police, negligently failed to establish and enforce appropriate pursuit policies and procedures and that the Kansas Highway Patrol was further negligent in its hiring, retention, supervision, education, training, and instruction of Trooper Saleh.

The State contends there is a complete lack of evidence in the record to support these claims and that it should be granted summary judgment on them. We agree. In its brief in support of the defendants' summary judgment motion, the State argues that there is no evidence to support these claims. In their brief in response to the defendants' motion, the plaintiffs do not contest this assertion. Nor do the plaintiffs attempt to resuscitate these claims on appeal. It appears that the plaintiffs have abandoned these claims. Accordingly, the State is entitled to summary judgment on them.

Affirmed in part, reversed in part, and remanded for further proceedings.

\* \* \*

GARDNER, J., dissenting:  I respectfully dissent. I would affirm based on lack of causation and not reach the issues presented in the cross-appeal.

*Summary judgment based on lack of proximate cause is appropriate here*

The issue of proximate cause typically presents a question of fact for the jury. *Hale v. Brown*, 287 Kan. 320, 324, 197 P.3d 438 (2008); *Zimmerman v. Brown*, 49 Kan.

App. 2d 143, 157-58, 306 P.3d 306 (2013). But a district court may decide causation against a plaintiff on summary judgment if the evidence permits no reasonable inference that could support proximate cause. *Siruta v. Siruta*, 301 Kan. 757, 767, 348 P.3d 549 (2015). See *Drouhard-Nordhus v. Rosenquist*, 301 Kan. 618, 618-19, 345 P.3d 281 (2015) (affirming grant of summary judgment based on lack of causation where evidence of a cause-and-effect relationship between the radiologist's alleged negligent diagnosis and the patient's death was speculative); cf. *Hale*, 287 Kan. at 324 (affirming dismissal of case because a third driver did not proximately cause a collision between two other vehicles). If the moving party shows the absence of facts to support an essential element of the nonmoving party's claim, that nonmoving party "'has the affirmative duty to come forward with facts to support its claim, although it is not required to prove its case.'" *U.S.D. No. 232 v. CWD Investments*, 288 Kan. 536, 556, 205 P.3d 1245 (2009) (quoting *Hurlbut v. Conoco*, 253 Kan. 515, 520, 856 P.2d 1313 [1993]). That burden, which rests on the plaintiffs here, is not met. The district court properly granted summary judgment for defendants in a well-reasoned, 26-page decision that thoroughly explains why the facts fail to present evidence of proximate cause upon which reasonable minds could differ.

Proximate cause is a cause that "'in natural and continuous sequence, unbroken by an efficient intervening cause, produces the injury and without which the injury would not have occurred, the injury being the natural and probable consequence of the wrongful act.' [Citation omitted.]" *Puckett v. Mt. Carmel Regional Med. Center*, 290 Kan. 406, 420, 228 P.3d 1048 (2010).

"There are two components of proximate cause: causation in fact and legal causation. To establish causation in fact, a plaintiff must prove a cause-and-effect relationship between a defendant's conduct and the plaintiff's loss by presenting sufficient evidence from which a jury can conclude that more likely than not, but for defendant's

31

conduct, the plaintiff's injuries would not have occurred." *Drouhard-Nordhus*, 301 Kan. at 623.

The causation finding is not made in a vacuum—the issue here is whether plaintiffs have shown a genuine issue of material fact that the trooper's *reckless* acts caused the collision. Although Kansas cases have not specifically addressed the causation issue in the context of a police pursuit, the Tenth Circuit did so in *Carl v. City of Overland Park, Kan.*, 65 F.3d 866 (10th Cir. 1995). There, the mother of a motorist killed by a fleeing suspect during a high-speed police pursuit brought a wrongful death action against the city and the police officer. The Tenth Circuit reviewed two Kansas Supreme Court opinions involving police chases—*Thornton v. Shore*, 233 Kan. 737, 666 P.2d 655 (1983), and *Hammig v. Ford*, 246 Kan. 70, 785 P.2d 977 (1990)—focusing on the Kansas court's language that an officer should not be made the insurer of a fleeing law violator. The Tenth Circuit predicted that Kansas courts would hold that the fleeing criminal's own conduct in fleeing the police and crashing his vehicle was the sole proximate cause of his injuries and that the decision of the pursuing officer to conduct that pursuit was not the proximate cause as a matter of law. See *Carl*, 65 F.3d. at 874.

In reaching that ruling, the Tenth Circuit distinguished between causation in typical police pursuit cases and causation where reckless acts are shown:

"While this case falls squarely within the set of typical police pursuit cases contemplated in *Thornton*, *Hammig*, and the cases cited therein, we would not necessarily predict that Kansas courts would *never* find proximate cause as a matter of law in *all* cases involving police pursuits. It is possible, for example, that the Kansas Supreme Court would rule differently on the proximate cause issue if there was evidence that the police acted with recklessness or intent, such as an egregious case where an officer ignored clear danger by deliberately initiating pursuit through a parade, a school crossing zone, or a densely populated area during rush hour. Reckless acts are qualitatively different from negligent

32

or grossly negligent acts (which are merely an extreme variant of carelessness), because reckless acts require an element of deliberateness—'a conscious acceptance of a known, serious risk.' Thus, under such extreme circumstances, a Kansas court might come out differently on the question of proximate cause. [Citations omitted.]" *Carl*, 65 F.3d at 874.

Plaintiffs do not present an "egregious case" in which the officer ignored a clear danger. Instead of occurring during a parade or some other "extreme circumstance," this pursuit took place at 9:30 p.m. on a Monday evening, in dry weather, on an artificially lit four-lane street, which the video shows carried very little traffic at the time. This is a "typical police pursuit case" which is doomed by lack of proximate cause. See *State v. Anderson*, 270 Kan. 68, 73, 12 P.3d 883 (2000) (discussing *Thornton*); *Clark v. Thomas*, 505 F. Supp. 2d 884, 892-93 (D. Kan. 2007) (discussing *Carl*).

*Plaintiffs' theory of causation is speculative*

Plaintiffs' theory of causation is that if the trooper had terminated his pursuit between 20th and 21st Street and no later than when Horton ran the red light at 21st Street (approximately 42 seconds before the collision), Horton would have slowed down by 29th Street and not crashed into the plaintiffs' vehicle. In other words, the trooper's reckless act of not terminating his pursuit at or near 21st Street caused plaintiffs' injuries. No other theory of causation was argued to the district court, and none other will be heard on appeal. The district court, after reviewing the evidence advanced by plaintiffs, found nothing cured "the ultimate speculation upon which plaintiffs' assertion of causation is left grounded."

"Plaintiffs cannot, as a matter of proof—and based on the entirety of the evidence advanced—establish that Mr. Horton would see, hear, or be aware of, and if he did, would have responded positively, timely, responsibly to the termination of the pursuit,

even had [the trooper] elected to do so at any point where the specter of a finding of reckless disregard in the act of continuing to pursue might reasonably arise."

"As part of the pretrial evaluation, the trial court . . . must determine whether the expert opinion is 'based on facts that enable the expert to express a reasonably accurate conclusion as opposed to conjecture or speculation.'" *First Savings Bank, F.S.B. v. U.S. Bancorp*, 117 F. Supp. 2d 1078, 1083 (D. Kan. 2000) (quoting *Kieffer v. Weston Land, Inc.*, 90 F.3d 1496, 1499 [10th Cir. 1996]). The district court properly made that determination here.

*Plaintiffs' evidence of causation is insufficient*

Plaintiffs rely on appeal on three pieces of evidence to show causation: the video recorded by the trooper's vehicle; expert testimony from Dr. Alpert, a criminologist; and deposition testimony of Kansas Highway Patrol Lieutenant Scott Martin. Review of this evidence shows no genuine issue of material fact regarding causation.

*Video of the pursuit*

The video shows, as noted above, that this was a typical police pursuit—it took place at 9:30 p.m. on a Monday evening, in dry weather, on an artificially lit four-lane street, which carried very little traffic at the time. No extraordinary circumstances are shown. See *Carl*, 65 F.3d at 874. The video shows how quickly the events transpired, how far behind Horton the trooper quickly became, and how Horton could not have seen the trooper for a significant period of time during the pursuit.

Plaintiffs contend that it is reasonable to infer that when Horton's car can be seen on the trooper's video, Horton could also have seen the trooper's car. But that contention

34

assumes that Horton was looking behind him the entire time that he was speeding away. That is an unreasonable inference, given the undisputed facts that Horton was actively fleeing from a law enforcement officer, accelerated and drove approximately 100 mph, sped through a red light, passed another southbound vehicle, and then managed to negotiate turns on a significantly curved street. Those events required Horton to give some attention to the road ahead.

The video confirms the district court's findings that immediately after Horton ran the red light at 21st Street, the trooper was such a distance behind Horton that it is questionable whether Horton, who was driving recklessly, could have seen the trooper. The video shows that if the trooper had stopped at 21st Street, Horton, who was blocks ahead of the trooper, could not have known it because of the lay of the land and his distance from the trooper. Although some Kansas roads may be straight and flat, Kansas Avenue between 20th and 29th streets is not, as the district court emphasized in carefully detailing how the distance between Horton and the trooper, the hill at 25th Street and the curvature of the road south of 25th Street would have obscured Horton's view of the trooper. And nothing in the video suggests that Horton more likely than not would have slowed down by 29th Street even if Horton had known the trooper had stopped his pursuit at 21st Street.

*The expert report*

Dr. Alpert's expert report provides the only possible evidence of causation in this case. But his report lacks the necessary factual basis to make it reliable:

> "It is necessary that the facts upon which an expert relies for his or her opinion should afford a reasonably accurate basis for his or her conclusions as distinguished from mere guess or conjecture. Expert witnesses should confine their opinions to relevant matters

35

which are certain or probable, not those which are merely possible." *State v. Struzik*, 269 Kan. 95, Syl. ¶¶ 2, 5 P.3d 502 (2000).

Our governing law incorporates this reliability requirement in K.S.A. 2016 Supp. 60-456(b). Under this law, before any expert may testify, the district court must find the proffered testimony "is based on sufficient facts or data," and is "the product of reliable principles and methods," and that "the witness has reliably applied the principles and methods to the facts of the case." K.S.A. 2016 Supp. 60-456(b). Although the district court did not specifically mention this statute, by finding Dr. Alpert's report to be speculative and lacking any factual basis the district court found his proffered testimony deficient in the very respects required by this statute. We generally affirm judgments which are correct, even when they articulate different reasons than we do. See *State v. Williams*, 303 Kan. 585, 595, 363 P.3d 1101 (2016). We should do so here.

The purpose of the reliability determination required by K.S.A. 60-456(b) is not to decide whether the expert's conclusions are correct but whether the analysis used to reach them is reliable. *Smart v. BNSF Railway Co.*, 52 Kan. App. 2d 486, 495-97, 369 P.3d 966 (2016). But here, one cannot tell what forms the basis for Dr. Alpert's conclusions. Plaintiffs do not suggest any basis except by conclusorily alleging: "Dr. Alpert's opinion is based on a plenary review of the facts of this case including the video, as well as the principles and methods of Dr. Alpert's expertise as a criminologist, which he reliably applied to the facts here." Dr. Alpert's affidavit and report are similarly vague and fail to specify any principle or method on which he relied.

Reliability of an expert's testimony may be demonstrated in various ways, chief among which are scientific theory and experience. *Smart*, 52 Kan. App. 2d at 495-97. When expert testimony is based on scientific theory, the court determines the reliability of proposed scientific testimony by looking to factors established in *Daubert v. Merrell*

36

*Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 585, 587, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). Those factors are: (1) whether the theory has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error associated with the theory; and (4) whether the theory has attained widespread or general acceptance. 509 U.S. at 592-94. Dr. Alpert's report includes none of those factors, nor similar indicia of reliability. Thus, if Dr. Alpert's testimony is based on scientific theory, it is unreliable.

If Dr. Alpert bases his opinions on experience instead of on scientific theory, he must meet other requirements. He must "'explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'" *Smart*, 52 Kan. App. 2d at 495. But Dr. Alpert's report does not attempt to do any of these things. "An expert cannot substitute generic experience for relevant data." *Smart*, 52 Kan. App. 2d at 500. Nothing in the record provides the necessary connection between Dr. Alpert's experience and his conclusions or shows that his testimony otherwise meets the reliability requirements of K.S.A. 2016 Supp. 60-456(b). Thus, if Dr. Alpert's testimony is based on experience, it is unreliable.

A review of Dr. Alpert's report also confirms its unreliability in at least two respects: his stated premise does not support his conclusion, and his report is based on assumptions rather than on facts. First, Dr. Alpert opines that the trooper should have terminated his pursuit "between 20th and 21st Street and no later than when [Horton] ran the red light at 21st Street"; had the trooper done so "it is more likely than not that [Horton] would not have crashed into the pick-up driven by Mr. Bennett at 29th." This latter conclusion rests solely on the premise that "it is more likely than not that drivers of fleeing vehicles will continue to flee as long as they are being chased." But that premise does not compel the conclusion Dr. Alpert attributes to it—that premise could just as

37

easily support a conclusion that the trooper should not have stopped his pursuit at all but should have pursued Horton more aggressively, causing Horton to drive faster and thus avoid the collision.

The inverse of the stated premise is the necessary one here, since plaintiffs' theory of causation is that had the trooper stopped his pursuit by 21st Street, Horton would have slowed down and not crashed into plaintiffs' vehicle. To support that conclusion, Dr. Alpert needed to show it is more likely than not that fleeing drivers in Horton's circumstances *will slow down* once they realize they are no longer being pursued. But that expert opinion was not offered. The premise that fleeing drivers will continue to flee as long as they are being pursued does not logically entail that proposition.

Secondly, Dr. Alpert's report offers no factual basis for its conclusion that "[h]ad the police terminated their active attempt to apprehend Mr. Horton, it is more likely than not that he would not have crashed into the pick-up driven by Mr. Bennett at 29th." Instead, this conclusion rests on two assumptions: that Horton would have immediately known if the trooper had stopped his pursuit by 21st Street, and that because of such knowledge Horton would have slowed down by 29th Street.

Dr. Alpert's conclusion incorrectly assumes that Horton had an unobstructed view of the trooper during the entire pursuit, opining that the trooper "inappropriately turned on his spotlight and directed it at the fleeing vehicle, *distracting the driver and impeding the driver's ability to see in his mirrors*." (Emphasis added.) Sagely, plaintiffs do not rely on that theory, yet they rely on a theory which assumes the very facts that the district court properly found lacking—that Horton could have seen or heard what the trooper did at all times before the collision, as if the trooper had been immediately behind and fully visible to him the entire time.

38

To the erroneous assumption that Horton would have somehow known that the trooper had stopped his pursuit, the report adds another unsupported assumption—that Horton would have slowed down by 29th Street. This is nothing more than inference stacking which is insufficient to prove a requisite fact. See *State v. Banks*, 306 Kan. 854, 859-60, 397 P.3d 1195 (2017). Dr. Alpert's report lacks the type of factual basis normally found in expert reports. It does not, for example, state why, or in what time frame, or in what distance, or under what circumstances fleeing criminals generally slow down after they realize a police pursuit has ended. Nothing in Dr. Alpert's report shows why he thinks Horton would likely have slowed down by 29th Street if he had somehow known that the trooper discontinued his pursuit at 21st Street. Nor does Dr. Alpert attempt to apply his theory to the facts of this case—he fails to explain why a reasonable person in Horton's position, having a suspended license, driving a car with a tag not assigned to it, fleeing from a law enforcement officer, and whose passenger was a runaway minor, would likely have slowed down at any point after the pursuit began. In such cases, causation is merely speculative, as the district court found. See *Drouhard-Nordhus*, 301 Kan. at 624-25 (finding generalized references to be speculative and inadequate to meet plaintiff's causation burden).

### Kansas Highway Patrol Lieutenant's testimony

Plaintiffs allege on appeal that Kansas Highway Patrol Lieutenant Scott Martin's testimony helps establish causation. Martin agreed that "[o]ne of the reasons for terminating a pursuit is the hope that the vehicle being pursued will then slow down and not create a hazard to vehicular and pedestrian traffic."

The district court cannot be faulted for not mentioning this evidence because plaintiffs did not argue it before the district court. Although plaintiffs' brief included part of Martin's deposition in its statement of undisputed facts, their brief did not make any

argument referring to or based on this testimony. It is not the district court's duty to make arguments for the parties. "Judges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991).

But including this testimony in the causation analysis makes no difference. Martin's testimony relates only to generalities, was not given in reference to any facts of this case, and conveys solely Martin's "hope." In other words, it expresses mere wishful thinking which adds nothing to the causation analysis. As plaintiffs' expert report acknowledges, Martin "approved the pursuit as appropriate and within policy."

*Good old common sense*

Plaintiffs also appeal to common sense and experience in claiming that Horton would have slowed down had he known that the trooper discontinued his pursuit. But common sense and experience would also suggest that Horton would *not* have slowed down regardless of what the trooper did because Horton also knew he was driving on a suspended license, in a stolen car (or a car with a stolen tag), with a minor runaway, and had just committed the additional crime of fleeing and eluding. Horton had every incentive to put as much space as possible between him and the law and had no incentive to slow down.

*Missouri cases demonstrate the lack of causation in typical police pursuit cases*

Several cases from Missouri, which use the same legal framework of proximate cause as we do in Kansas, demonstrate the propriety of granting summary judgment based on lack of causation in typical police pursuit cases such as this one. See, e.g., *Stanley v. City of Independence*, 995 S.W.2d 485, 488 (Mo. 1999). In *Stanley*, the court affirmed summary judgment for the City, finding "there is no way to tell whether the

collision would have been avoided if the officer had abandoned the pursuit after initiating it." 995 S.W.2d at 488. The court explained why the officer's 45-second pursuit at speeds reaching 70 mph was not the proximate cause of the suspect's collision with another car:

> "Here, officer Hill's conduct was not a proximate cause of the collision. The suspects in the van made the initial decision to flee, sped through red lights and in the wrong lane of traffic, and collided with the decedents. Any negligence by officer Hill is connected to the plaintiffs' injury solely through the conduct of the fleeing van. Thus, the only conceivable causal link between the officer's alleged negligence and the collision is the conjectural effect of his pursuit on the pursued vehicle. Shortly after initiating the pursuit, the officer observed, 'this guy is going nuts on us.' There is nothing other than speculation to reach a conclusion that the officer's conduct was a 'cause' of the collision. Put another way, there is no way to tell whether the collision would have been avoided if the officer had abandoned the pursuit after initiating it. Thus, there is no factual basis to support a finding of proximate cause." *Stanley*, 995 S.W.2d at 488.

The same is true in this case—only the conjectural effect of the trooper's pursuit links the officer's acts to the collision.

Similarly, in *Dilley v. Valentine*, 401 S.W.3d 544, 549 (Mo. Ct. App. 2013), the court affirmed summary judgment concluding that an officer's pursuit of a fleeing suspect for less than two minutes at speeds reaching 50-55 mph was not the proximate cause of the suspect's collision with a minivan. In words similar to those used by the district court in our case, the Missouri Court of Appeals found the conclusion that "the collision would have been avoided had [the officer] abandoned the pursuit is based only on speculation." 401 S.W.3d at 549.

More recently, the Missouri Court of Appeals affirmed summary judgment in favor of the State where plaintiffs showed no causal link between the trooper's alleged negligence and a postpursuit collision in *Throneberry v. Missouri State Highway Patrol*,

41

526 S.W.3d 198, 201 (Mo. Ct. App. 2017), *motion for transfer denied* October 5, 2017. It found the officer's pursuit of the suspect was not the proximate cause of an accident in which the fleeing suspect killed a third party under the following facts: the pursuit reached 91 mph, the pursuit lasted two minutes or less, there was no physical contact between the officer's patrol car and the suspect's vehicle, and the officer's emergency lights and siren were activated. It found the "'only conceivable causal link between [the trooper's] alleged negligence and the collision is the conjectural effect of [the trooper's] pursuit on the pursued vehicle.' [Citation omitted.]" 526 S.W.3d at 209.

The court rejected the same theory of proximate cause that plaintiffs assert in this case, finding the assumption that "at some point after a pursuit is abandoned, a fleeing suspect will stop driving recklessly . . . is itself 'rank conjecture and speculation.'" *Throneberry*, 526 S.W.3d at 211. It found that regardless of factual variances based on the speed, distance, or duration of the pursuit, nothing other than speculation supports a conclusion that the officer's conduct was a "cause" of the collision. 526 S.W.3d at 211. See also *Frazier v. City of Kansas*, 467 S.W.3d 327, 337-38 (Mo. Ct. App. 2015) (finding no error in granting partial summary judgment on negligence claims where the expert's opinion was based on conjecture and speculation because he merely assumed the driver saw the officer when he commenced the pursuit and that the driver's reckless driving was a result of the pursuit, but did not know for certain whether the driver was even aware that he was being pursued at various points).

These cases support the rationale used by the district court here—there is no way to tell whether the collision would have been avoided if the trooper had abandoned the pursuit.

42

*Conclusion*

The Kansas Supreme Court in *Yount v. Deibert*, 282 Kan. 619, 628, 147 P.3d 1065 (2006), answered the question presented by this case—how much evidence of causation must a plaintiff present to allege an actionable basis for negligence (here recklessness) and defeat a summary judgment motion? It held that when the probabilities are at best evenly balanced, it becomes the duty of the court to rule as a matter of law for the defendant:

> "'The plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant. Where the conclusion is not one within common knowledge, expert testimony may provide a sufficient basis for it, but in the absence of such testimony it may not be drawn.'" *Yount*, 282 Kan. at 628 (quoting Prosser & Keeton on Torts § 41, p. 269-70 [5th ed. 1984]).

A mere possibility of causation based on speculation is all we have here. Because plaintiffs failed to introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result, I would affirm.