No. 120,369

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DAVID HENDERSON,
*Appellant*,

v.

MONTGOMERY COUNTY BOARD OF COMMISSIONERS

and

DEPUTY MICHAEL GRIMES,
*Appellees*.

SYLLABUS BY THE COURT

1.

The Kansas Tort Claims Act provides that "each governmental entity shall be liable for damages caused by the negligent or wrongful act or omission of any of its employees while acting within the scope of their employment." K.S.A. 75-6103(a). Under the Kansas Tort Claims Act, governmental liability is the rule and immunity the exception. The burden is on the governmental entity to establish immunity under one of the statutory exceptions in K.S.A. 75-6104.

2.

Under the circumstances of this case, a law enforcement officer's decision to return fire at a fleeing felon falls within the discretionary function exception in K.S.A. 75-6104(e). That discretion is not defeated by Felony High Risk Vehicle Stop guidelines.

Appeal from Montgomery District Court; DANIEL D. CREITZ, judge. Opinion filed February 7, 2020. Affirmed.

*W.J. Fitzpatrick*, of Fitzpatrick & Bass, of Independence, for appellant.

*Timothy J. Finnerty* and *Jason M. Janoski*, of Wallace Saunders, Chartered, of Wichita, for appellees.

Before LEBEN, P.J., GARDNER, J., and MCANANY, S.J.

GARDNER, J: This case illustrates the proverb that "no good deed goes unpunished." When David Henderson gave hitchhiker Alejandro Garcia a ride in his pickup truck, he thought Garcia was just having car trouble. But Garcia was a fugitive who had fled to Kansas after having been involved earlier that day in shooting an Oklahoma police officer. Garcia's two codefendants were captured in Oklahoma, but Garcia made it to Kansas where Henderson innocently picked him up.

Montgomery County Sheriff's Deputy Michael Grimes learned of the situation and followed Henderson in his patrol car. When Henderson eventually stopped his pickup truck to let Garcia out in a rural driveway, Grimes tried to apprehend Garcia. But Garcia got out of Henderson's pickup truck and shot at Grimes. Grimes retreated, fell backwards, and returned fire. One of his bullets hit Henderson in the neck. Garcia escaped.

Henderson then sued the Montgomery County, Kansas Commissioners and Grimes (Appellees) for negligence. In due course, the district court granted summary judgment in favor of the Appellees. It found them not liable under the public duty doctrine, since no special relationship was shown, and found them immune from liability under the discretionary function exception, K.S.A. 75-6104(e). Henderson appeals. Finding the district court properly applied K.S.A. 75-6104(e), we affirm the grant of summary judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Both parties generally agree with the district court's recitation of the facts, so we adopt that recitation here.

**"FACTS**

"Grimes, in addition to being a deputy, was a member of the Montgomery County Special Emergency Response Team (SERT). On May 28, 2015, Grimes reported for duty to search for and try to apprehend Garcia. Garcia had fled from Oklahoma after shooting an Oklahoma officer. Garcia's two co-defendants were apprehended in Oklahoma.

"Before Grimes got into his patrol vehicle, dispatch announced that Garcia was last seen in a red pickup truck. Grimes was wearing his tactical vest and had his service rifle across his vest.

"The Plaintiff was driving his red pickup truck when he gave Garcia a ride. The Plaintiff's red pickup passed Grimes' patrol vehicle, and Grimes saw Garcia in the passenger seat. Due to the heavy dispatch traffic Grimes called dispatch on his personal cell phone requesting backup. Grimes remained on his phone and closely followed the Plaintiff's truck. Grimes never turned on his emergency lights or siren. He did not try to pull over the Plaintiff, and the Plaintiff did not feel that Grimes tried to pull him over. The Plaintiff pulled over in a rural Montgomery County driveway to let Garcia out. Grimes planned to wait for backup, parking about 75 feet from the Plaintiff's truck.

"Garcia exited the Plaintiff's vehicle and was walking toward the front passenger's side. The Plaintiff's truck was parked between Garcia and Grimes. Grimes exited his vehicle and walked toward the Plaintiff's truck. Grimes commanded, 'Sheriff's Office—Let me see your hands!' Garcia only raised his left hand. The Plaintiff put his hands out the driver's window. Then Garcia dropped his left hand and walked to the back of the Plaintiff's truck. Grimes repeated the command.

"Garcia pointed a semi-automatic handgun at Grimes and fired. Grimes back-pedaled, tripped, and fell on his back. Grimes heard bullets ricochet off the road near him. Grimes thought he was going to be shot. He laid suppressive fire. If he had not used suppressive fire, Grimes believed that he would have been killed.

"The Plaintiff was shot in the neck during the exchange of gunfire between Garcia and Grimes. The Plaintiff filed suit against Grimes and the Montgomery County

3

Board of Commissioners for negligence, claiming either Grimes provoked the incident or negligently discharged his firearm."

Appellees moved for summary judgment, arguing:

- The public duty doctrine shielded them from liability because police owe the duty of preserving the peace to the general public, not to any one individual;
- Henderson failed to establish the duty element of his negligence claim because he could not show a special relationship between himself and Grimes; and
- Appellees were entitled to immunity under K.S.A. 75-6104(e) of the Kansas Tort Claims Act (KTCA), because Grimes was performing a discretionary function when he injured Henderson.

Henderson responded that Appellees had failed to claim an affirmative defense under K.S.A. 75-6104(d) so they had waived that argument. Henderson also argued that the public duty doctrine under K.S.A. 75-6104(d), even if not waived, still did not apply because Grimes had a special relationship with Henderson, and because the statute impermissibly circumvented our Supreme Court's decision in *Fudge v. City of Kansas City*, 239 Kan. 369, 720 P.2d 1093 (1986), *superseded by statute as stated in Woodruff v. City of Ottawa*, 263 Kan. 557, Syl. ¶ 8, 951 P.2d 953 (1997). Henderson asserted that *Fudge* was controlling caselaw.

Appellees replied that they were not relying on K.S.A. 75-6104(d) but only on the common-law public duty doctrine as discussed in *Keiswetter v. State*, 304 Kan. 362, 373 P.3d 803 (2016). That doctrine generally provides that breach of a legal duty owed to the public at large, such as a law enforcement officer's general duty to preserve the peace, is not actionable. Instead, a plaintiff suing the government must show that the governmental entity owed a duty to an individual member of the public. See 304 Kan. at 365. Appellees also argued that the public duty doctrine is not an affirmative defense and is not waivable.

4

The district court granted Appellee's motion for summary judgment, rejecting Henderson's arguments that a special relationship existed between Henderson and Grimes. The district court found:

- Henderson was not in the State's custody or care after Grimes commanded him to put his hands up; and
- Grimes' commands or other affirmative acts did not cause Henderson to justifiably rely on Grimes to protect him.

Because the district court found no special relationship, it found Henderson's claim was barred by the public duty doctrine. The district court also held that Henderson failed to provide expert testimony on the issue of duty, as it thought *Hopkins v. State*, 237 Kan. 601, 702 P.2d 311 (1985), required.

Alternatively, the district court held that Appellees were immune from suit under K.S.A. 75-6104(e). The district court explained why it found Grimes was performing a discretionary function when he injured Henderson:

"Here, the Plaintiff's allegations of negligent provocation and negligent discharge of a firearm directly challenge Grimes' exercise of discretion. Grimes knew that Garcia had already shot an Oklahoma police officer. Grimes knew that Garcia was a fugitive. Getting out of the car to arrest Garcia, rather than waiting for backup was a discretionary decision. Grimes' decision to not wait in the car while an armed felon fled and possibly went into a rural Montgomery County home was a discretionary decision. Grimes believed that if he did not apprehend Garcia, . . . Garcia could go up the driveway and cause someone in the home great bodily harm. So, Grimes, in his discretion, reasoned that he should exit his patrol car and approach Garcia.

"Once Garcia started shooting at Grimes, Grimes testified that if he did not lay down suppressive fire, he believed that he would be shot while lying on the road. These are discretionary decisions Grimes made "with reason and good conscience in the interest of protecting the rights of all parties and serving the ends of justice. *Williams*, 54 Kan.

5

App. 2d at 613. The Defendants are also immune from liability pursuant to the discretionary function exemption to the KTCA, K.S.A. 75-6104(e)."

Henderson timely appeals.

## DID THE DISTRICT COURT ERR IN FINDING THE PUBLIC DUTY DOCTRINE BARS HENDERSON'S CLAIMS?

We first address Henderson's claim that the district court erred in applying the pubic duty doctrine.

*The public duty doctrine*

"[T]he first hurdle that a plaintiff suing a governmental entity in negligence generally must overcome is establishing that the entity owed a duty to the plaintiff individually rather than a duty to the public at large." *Williams v. C-U-Out Bail Bonds*, 310 Kan. 775, 788, 450 P.3d 330 (Kan. 2019). This public duty doctrine bars a governmental entity's liability unless the plaintiff can show a special relationship that gives rise to a specific duty owed to him or her. *Keiswetter,* 304 Kan. at 365.

"The mere fact that a governmental entity owes a legal duty to the public at large does not establish that the governmental entity owed a duty to an individual member of the public. See *Montgomery v. Saleh*, 55 Kan. App. 2d 429, 438-39, 419 P.3d 8 (2018) (quoting *Kirk v. City of Shawnee*, 27 Kan. App. 2d 946, Syl. ¶ 3, 10 P.3d 27 [2000]). A law enforcement officer's general duty to preserve the peace is one such duty. Accord *Mills v. City of Overland Park*, 251 Kan. 434, Syl. ¶ 5, 837 P.2d 370 (1992) ('As a general rule, the duty of a law enforcement officer to preserve the peace is a duty owed to the public at large.'); see *Commercial Union Ins. Co. v. City of Wichita*, 217 Kan. 44, 53, 536 P.2d 54 (1975); see also *South et al. v. State of Maryland, Use of Pottle*, 59 U.S. (18 How.) 396, 402-03, 15 L. Ed. 433 (1855) ('It is an undisputed principle of the common law, that for a breach of a public duty, an officer is punishable by indictment; but where

6

he acts ministerially, and is bound to render certain services to individuals . . . he is liable for acts of misfeasance or non-feasance to the [injured] party.').

"To warrant an exception to the public duty doctrine, a plaintiff suing a governmental entity must establish either a special relationship or a specific duty owed to the plaintiff individually. See *Mills*, 251 Kan. 434, Syl. ¶ 5 ('Absent some special relationship with or specific duty owed an individual, liability will not lie for damages.')." *Williams*, 310 Kan. 775 at 788-89.

A special duty may arise from various sources. See *Williams*, 310 Kan. at 789. Henderson contends, among other theories, that he was in the State's custody or care at the time of the shooting, thus a special duty existed between Grimes and himself, rendering the public duty doctrine inapplicable.

"Generally, a special duty may exist between a government agency and an injured person, rendering the public duty doctrine inapplicable to their encounter, when: (1) a special relationship existed between the governmental agency and the wrongdoer (*i.e.,* the wrongdoer was in the State's custody or care); (2) a special relationship existed between the governmental agency and the injured person (*i.e*., the injured person was in the State's custody or care); or (3) the government agency performed an affirmative act that caused injury or made a specific promise or representation that under the circumstances created a justifiable reliance on the part of the person injured. [Citation omitted.]" *Potts v. Board of Leavenworth County Comm'rs,* 39 Kan. App. 2d 71, 81, 176 P.3d 988 (2008).

Henderson argues that he became disabled from exercising any care for his own safety when he stuck his hands out of the window of his pickup truck to comply with Officer Grimes' order, "Let me see your hands." At that point, Henderson contends, his safety rested solely in Grimes' hands, establishing a special relationship between them. See *Williams*, 310 Kan. at 789 (discussing special relationships set out in Restatement [Second] of Torts §§ 314A, 316-319, and 320 [1964]).

7

The parties raise several thorny procedural issues about the public duty doctrine. These include:

- whether that doctrine has been fully codified in the KTCA or continues to exist at common law;
- whether the plaintiff has the burden to prove the existence of a special relationship to avoid application of the public duty doctrine; or
- whether the State has the burden to prove the absence of a special relationship to invoke the protection of the public duty doctrine.

But we find it unnecessary to jump into the briar patch and resolve these issues now.

As the Kansas Supreme Court has repeatedly done in similar cases, we assume, but do not decide, that a special relationship or individual duty existed, sufficient to avoid the public duty doctrine. See, e.g., *Keiswetter*, 304 Kan. at 367; *Soto v. City of Bonner Springs*, 291 Kan. 73, 78, 238 P.3d 278 (2010). Thus, we proceed as though we agree that Henderson was in the State's custody or care when Henderson complied with Grimes' command to put his hands where Grimes could see them. So we need determine only whether the Appellees' claimed statutory exception to liability—the discretionary function exception—applies. If that exception applies, it disposes of this case.

DID THE DISTRICT COURT ERR BY APPLYING THE DISCRETIONARY FUNCTION EXCEPTION OF THE KANSAS TORT CLAIMS ACT?

Henderson contends the district court erred by applying an exception to liability under the KTCA. That Act provides that "each governmental entity shall be liable for damages caused by the negligent or wrongful act or omission of any of its employees while acting within the scope of their employment." K.S.A. 75-6103(a). Under the KTCA, governmental liability is the rule and immunity the exception. The KTCA

8

provides many exceptions to liability which are set forth in K.S.A. 75-6104. The burden rests on the governmental entity to establish any KTCA exception. *Patterson v. Cowley County, Kansas*, 307 Kan. 616, 630, 413 P.3d 432 (2018). The district court found K.S.A. 75-6104(e), the discretionary function exception, applied here. Whether a governmental entity is immune from liability under an immunity exception of the KTCA is a matter of law. Accordingly, our review is de novo. *Soto*, 291 Kan. 73, Syl. ¶ 4. And summary judgment is appropriate if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. K.S.A. 60-256(c). Our standard of review for summary judgments is de novo. *Associated Wholesale Grocers, Inc. v. Americold Corp.*, 261 Kan. 806, 820, 934 P.2d 65 (1997).

*Other immunities are irrelevant*

We pause to note what is not argued here. First, although Appellees asserted the police protection immunity exception of K.S.A. 75-6104(n) to the district court, they do not rely on that subsection on appeal. That subsection provides immunity for the "failure to provide, or the method of providing, police or fire protection." We have previously found that this subsection codifies the common-law public duty doctrine.

> "In K.S.A. 75-6104, the KTCA sets forth a lengthy, nonexclusive list of immunities to the general rule of governmental liability for tortious conduct. The police protection immunity states that a public entity or its employees 'shall not be liable for damages resulting from failure to provide, or the method of providing, police or fire protection.' K.S.A. 75-6104(n). That section codifies the common-law principle of government immunity known as the public duty doctrine. *Hopkins*, 237 Kan. at 609-10 (Various immunities in K.S.A. 75-6104, including that for police and fire protection, codify preexisting common-law doctrine.); see *Robertson v. City of Topeka*, 231 Kan. 358, 363, 644 P.2d 458 (1982). Under that doctrine, governmental entities could not be liable for breach of duties owed the general public as opposed to particular individuals. 231 Kan. at 363 ('[T]he duty of a law enforcement officer to preserve the peace is owed to the public at large, not a particular individual.'); *Potts v. Board of Leavenworth County*

9

*Comm'rs,* 39 Kan. App. 2d 71, 80-81, 176 P.3d 988 (2008) (outlining scope of public duty doctrine). Because municipalities provide police protection to the public at large, they could not be sued for the negligent delivery of that service in a particular instance. *Robertson*, 231 Kan. at 363 ('Absent some special relationship with or specific duty owed an individual, liability will not lie for damages.'); *Potts*, 39 Kan. App. 2d at 81. For example, a city could not be successfully sued because police officers were inexcusably slow in responding to a call of a home invasion in progress and, as a result, the victim suffered prolonged abuse and serious injuries at the hands of the criminals." *Estate of Belden v. Brown County*, 46 Kan. App. 2d 247, 290-91, 261 P.3d 943 (2011).

Because Appellees do not argue K.S.A. 75-6104(n), the KTCA immunity modeled on the public duty doctrine, we do not address it.

Second, although Henderson devotes a good chunk of his argument to arguing that K.S.A. 75-6104(d) does not apply, Appellees have not invoked that exception either. That exception provides immunity for:

"(d) adoption or enforcement of, or failure to adopt or enforce, any written personnel policy which protects persons' health or safety unless a duty of care, independent of such policy, is owed to the specific individual injured, except that the finder of fact may consider the failure to comply with any written personnel policy in determining the question of negligence." K.S.A. 75-6104(d).

We have found that this subsection supplies the appropriate tort claim immunity where the adoption or enforcement of agency policies and procedures is directly alleged to give rise to the injury and no duty independent of the challenged policy is shown. This occurred in *Jarboe v. Board of Sedgwick County Comm'rs*, 262 Kan. 615, 634, 938 P.2d 1293 (1997). After Jarboe's son was shot by a juvenile who had escaped from a youth residence facility, Jarboe alleged, among other matters, that the County had negligently failed to follow its policy on room checks. The court found that even assuming the policy had been violated, the County was immune under K.S.A. 1996 Supp. 75-6104(d) because

10

the County owed no independent duty to the Jarboes to prevent the juvenile from leaving the facility.

In contrast, when a plaintiff claimed a jail's policy for monitoring inmates was substandard, leading to an inmate's suicide, but the jail owed a duty to the inmate independent of that policy, K.S.A. 75-6104(d) did not apply. *Estate of Belden*, 46 Kan. App. 2d at 285, 293.

> "K.S.A. 75-6104(d) supplies the appropriate tort claim immunity here, at least as to the jail policies and procedures directly at issue. Those policies—regulating the monitoring of inmates in distress and prohibiting inmates from obscuring the windows in their cells—pertain to the health and safety of those confined in the jail. In turn, K.S.A. 75-6104(d) affords immunity to government entities based on the adoption and enforcement of health and safety policies *only if* the entities owe no independent duty to the persons protected. As the Kansas courts recognize, governmental bodies maintaining penal facilities owe a freestanding duty to the inmates to act reasonably to provide a safe environment. Accordingly, Brown County secures no refuge in K.S.A. 75-6104(d)." *Estate of Belden*, 46 Kan. App. 2d at 293.

Because Appellees do not rely on any immunity that subsection (d) may provide, we do not address it further.

*The discretionary function exception*

The sole exception Appellees invoke is K.S.A. 75-6104(e), the discretionary function exception. Henderson argues that the district court erred by applying this exception.

11

*Has Henderson waived this argument*?

Before we can reach the merits of Henderson's argument, we need to resolve a procedural matter—Appellees' assertion that Henderson waived this argument by insufficiently briefing it. Appellees rely on the principle that a point raised incidentally in a brief and not argued further is considered abandoned. *Russell v. May*, 306 Kan. 1058, 1089, 400 P.3d 647 (2017).

Appellees correctly note that Henderson gives K.S.A. 75-6104(e) short shrift in his appellate brief. That brief refers to that subsection only twice, summarily stating:

- "Due to [Felony High Risk Vehicle Stop] FHRS guidelines, exclusions in K.S.A. 75-6104(e) and (n) are neutered by *Fudge*"; and
- "*Fudge* disposes of any claim under exceptions (e) and (n) due to the [FHRS] guidelines."

Henderson then argues how negligence claims against the government escape the grasp of K.S.A. 75-6104(d) when an independent duty and mandatory guidelines, such as FHRS, are shown.

Yet Henderson does not explain why he believes K.S.A. 75-6104 (e) is neutered by *Fudge*, or why he believes *Fudge* remains good law. An argument not supported with pertinent authority is considered waived and abandoned. *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 645, 294 P.3d 287 (2013).

Henderson's reply brief explains that he intended his argument about the FHRS guidelines to challenge the district court's reliance on K.S.A. 75-6104(e). Henderson was arguing that under the principles outlined in *Fudge*, the discretionary function exception does not apply when a clearly defined mandatory duty or guideline applies, as he

12

contends FHRS guidelines are. See *Thomas v. Board of Shawnee County Comm'rs*, 293 Kan. 208, 235, 262 P.3d 336 (2011).

Although this issue presents a close call, we decline to find waiver or abandonment here. Henderson has sufficiently, although summarily and somewhat confusingly, argued against the district court's reliance on K.S.A. 75-6104(e). We thus reach the merits of this issue.

*Does* Fudge *make K.S.A. 75-6104(e) inapplicable?*

Henderson first contends that K.S.A. 75-6104(e), the discretionary function exception, is inapplicable as a matter of law. That statute provides a "discretionary function" exception to government liability. It immunizes government actors and entities from liability for "any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee, whether or not the discretion is abused and regardless of the level of discretion involved." K.S.A. 75-6104(e).

Henderson's main argument is that our Supreme Court's decision in *Fudge* precludes application of this exception to liability, given that Grimes was required to act in accordance with the FHRS guidelines. In *Fudge*, after a man died as a result of a drunk driver's actions, his widow sued Kansas City and various police officers who had contact with the drunk driver. Our Supreme Court found that because the Kansas City Police Department had a specific standard in its operating procedure manual which detailed mandatory procedures for handling various police situations, including how to deal with intoxicated persons, the officers had no discretion to deviate from those procedures. The manual required the officers to take the intoxicated person into protective custody, yet they had not done so. 239 Kan. at 372-73. The *Fudge* court held: "Where police officers are subject to a specific, mandatory set of guidelines to use with regard to handling

13

intoxicated persons, the officers and the employing municipality are subject to liability under the Kansas Tort Claims Act for the failure to follow those guidelines." 239 Kan. 369, Syl. ¶ 3. Accordingly, the discretionary function exception—then K.S.A. 1981 Supp. 75-6104(d)—did not apply. 239 Kan. at 374-75.

*Fudge* was decided in 1986. In 1987, the Legislature swiftly showed its displeasure with *Fudge* by enacting a new subsection (e), rewording the discretionary function exception previously in (d), and moving it to subsection (e). The statute then read:

"A governmental entity or an employee acting within the scope of the employee's employment shall not be liable by damages resulting from:

. . . .

"(d) adoption or enforcement of, or failure to adopt or enforce, any written personnel policy which protects persons' health or safety unless a duty of care, independent of such policy, is owed to the specific individual injured, except that the finder of fact may consider the failure to comply with any written personnel policy in determining the question of negligence;

"(e) any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee, whether or not the discretion *is* abused *and regardless of the level of discretion involved.*" (Emphasis added to show new language.) K.S.A. 1987 Supp. 75-6104; L 1987, ch. 353, § 3.

In *Jarboe*, our Supreme Court held that those legislative amendments to the discretionary function exception were enacted to overrule the holding in *Fudge*:

"The legislative history of K.S.A. 75-6104(d) makes it clear that the 1987 amendment to that statute was intended to not allow the result in *Fudge v. City of Kansas City*, 239 Kan. 369, 720 P.2d 1093 (1986), to remain as the law in Kansas. *Fudge* can no longer be relied upon as valid precedent to establish liability as a result of a public employee's failure to follow written personnel policies, unless an independent duty of care is owed to the injured party." 262 Kan. 615, Syl. ¶ 1.

14

As noted above, Jarboe's parents argued that under *Fudge*, the Kansas Department of Social and Rehabilitation Services and Sedgwick County employees owed their son a special duty arising from the mandatory policies that may have prevented the juvenile from leaving the premises. But our Supreme Court squarely rejected that argument stating: "*Fudge* is no longer a decision that can be relied upon." *Jarboe*, 262 Kan. at 626. Thus, a duty must arise from somewhere other than the bed check policy allegedly violated.

Our Supreme Court affirmed the district court's application of K.S.A. 1996 Supp. 75-6104(d) and (e) in *Jarboe*:

> "[I]t is clear to us that fact situations like the one in this case are exactly the type where the Kansas Legislature desired to grant immunity to governmental units. The legislative history makes this clear, and the addition of the present subsection (d) and the new wording of subsection (e) to 75-6104 protects the actions of SRS and Sedgwick County in this case." 262 Kan. at 634.

The court again addressed *Fudge*, *Jarboe*, and the effects of the 1987 amendments on the discretionary function exception in *Woodruff*:

> "*Fudge* was decided in 1986. Kansas courts recognize the rule that a breach of a duty imposed by law is negligence and that damages may be predicated on a violation of a statute if the breach is the proximate cause of the injury or substantially contributes to the injury. The declaration of public policy of whether an action can be brought pursuant to a statute is a function of the legislative branch of our government. *Brunett v. Albrecht*, 248 Kan. 634, Syl. ¶ 5, 810 P.2d 276 (1991). After *Fudge*, the legislature made a clear statement that this court had wrongly interpreted the discretionary function exception." 263 Kan. at 566.

Justice Six concurred, writing separately "to counter any inference that the *Fudge* rationale, as described in *Jarboe*, 262 Kan. 615, Syl. ¶ 1, may remain alive and well. The

15

post-*Fudge* amendment in K.S.A. 75-6104(d) controls." 263 Kan. at 567 (Six, J., concurring).

Because the legislative amendments to K.S.A. 75-6104(d) and (e) superseded *Fudge*, Henderson's argument that *Fudge* is still good law fails. Henderson contends that the Legislature has no power to overrule the Kansas Supreme Court in *Fudge* or other cases. But the Kansas Supreme Court has twice found that its decision in *Fudge* is no longer alive and well. *Woodruff*, 263 Kan. at 567. We are duty-bound to follow Kansas Supreme Court precedent, absent some indication the Supreme Court is departing from its previous position. *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017). We find no indication of a departure from *Jarboe* and *Woodruff*. Because the legislative amendments superseded *Fudge*, *Fudge* is not a decision that we can rely on.

*Does an Independent Duty Plus Guidelines Make Appellees Liable?*

Despite Henderson's erroneous reliance on *Fudge*, the thrust of his argument, as we understand it, remains—that no discretionary function immunity exists under subsection (e), as a matter of law, when an independent duty has been shown and specific agency guidelines govern the employee's conduct. Again, we assume the existence of an independent duty here based on a special relationship, as though we had found that Henderson was in the State's custody from the moment Henderson complied with Grimes' command to put his hands up. So our focus turns to whether agency policies required Grimes to act, or to refrain from acting, in specific ways—were they mandatory or, instead, discretionary.

Henderson asserts that agency guidelines eliminate discretionary immunity under (e), citing *Thomas*:

16

"This court also has repeatedly put emphasis on the mandatory versus permissive character of direction given to the defendant actor. '[W]here there is a "clearly defined *mandatory* duty or guideline, the discretionary function exception is not applicable."' *Soto*, 291 Kan. at 80 (quoting *Nero,* 253 Kan. at 585; and citing *Barrett v. U.S.D. No. 259*, 272 Kan. at 263; *Kansas State Bank & Tr. Co.,* 249 Kan. at 365). For purposes of the exception, '[a] *mandatory* guideline can arise from agency directives, case law, or statutes.' *Soto*, 291 Kan. at 80 (citing *Barrett*, 272 Kan. at 263; *Bolyard*, 259 Kan. at 452-54). Such a guideline leaves little to no room for individual decision making, exercise of judgment, or use of skill, and qualifies a defendant's actions as ministerial rather than discretionary. See *Nero*, 253 Kan. at 593-94 (citing *Dougan*, 243 Kan. at 322-23) (ministerial act 'performance of some duty involving no discretion' where discretion defined as 'capacity to distinguish between what is right and wrong, lawful and unlawful, or wise or foolish sufficiently to render one amenable and responsible for his acts')." *Thomas*, 293 Kan. at 235.

Henderson is thus correct that when a "clearly defined mandatory duty or guideline" governs the employee's conduct, the discretionary function exception generally does not apply.

"Generally, the discretionary function exception is inapplicable when there is a '"clearly defined mandatory duty or guideline,"' which can arise from statutes, caselaw, or agency directives. [*Soto*,] 291 Kan. at 80 (quoting *Nero v. Kansas State University*, 253 Kan. 567, 585, 861 P.2d 768 [1993]). Compare *Cansler v. State*, 234 Kan. 554, 570, 675 P.2d 57 (1984) (the State's duties to confine prisoners and warn the public when they escape were imposed by law and therefore nondiscretionary), with *Patterson*, 307 Kan. at 638 (discretionary function immunity for road sign decisions barred suit against county when applicable guidelines did not mandate placement of allegedly missing road sign under facts alleged by defendant). But this court has cautioned that '"we have not held that the existence of any duty deprives the State of immunity under the discretionary function exception."' *Thomas*, 293 Kan. at 236 (quoting *Schmidt v. HTG, Inc.*, 265 Kan. 372, 392, 961 P.2d 677 [1998])." *Hill v. State*, 310 Kan. 490, 510-11, 448 P.3d 457 (2019).

17

Henderson then contends that when viewed in the light most favorable to him, Grimes was subject to mandatory guidelines—the FHRS guidelines—throughout his pursuit of Garcia. He argues that the district court erred by finding these guidelines were "only guidelines," which, by implication, were not mandatory.

*Did the FHRS Guidelines Apply to Grimes?*

The parties dispute whether the FHRS guidelines Henderson relies on applied to Grimes at the time of the event. Appellees cite Grimes' testimony that he could not identify those FHRS guidelines as the same ones he had received 10 years earlier when he attended the Kansas Law Enforcement Training Center. Henderson counters with Grimes' testimony that he was instructed about the standard for felony high risk vehicle stops during his training there, and that these FHRS guidelines appear to be similar or the same as the standard he learned when he was certified. We assume, without finding, that the FHRS guidelines Henderson and his expert rely on did apply to Grimes when he injured Henderson.

*Are the Guidelines Mandatory or Permissive?*

We thus reach the crucial issue—whether the FHRS guidelines create a clearly defined mandatory duty or guideline rendering the discretionary function exception inapplicable.

When all material facts are uncontroverted, "whether an exception of the KTCA applies to grant immunity to a governmental entity is a question of law." *Keiswetter*, 304 Kan. at 366. The sole disputed fact here is when Garcia got out of Henderson's pickup truck. Grimes testified that when he got out of his patrol car, Garcia was already out of Henderson's pickup truck. Grimes then shouted for the first time, "Let me see your hands." The district court credited that view. But Henderson testified that Garcia

18

remained in the pickup truck until the second time Grimes shouted, "Let me see your hands," as Grimes was approaching the pickup truck. Yet Henderson does not contend that this factual dispute creates a genuine issue of material fact precluding summary judgment. The material facts here are undisputed.

The term "discretionary function or duty" is not defined in the KTCA, so our courts look "foremost to the nature and quality of the discretion exercised" to determine whether a function or duty is discretionary. *Soto*, 291 Kan. at 79. The question of whether discretionary function immunity applies is highly contextual. *Williams*, 450 P.3d at 346. The mere application of some judgment is not enough, since judgment is used in almost every human endeavor. *Soto*, 291 Kan. at 79. Discretionary acts may involve policy-making or require some kind of expertise. *Thomas*, 293 Kan. at 234. On the other hand, ministerial decisions require very little expertise or decision-making. 293 Kan. at 235. Although Kansas cases may state the narrow view that the discretionary function is limited to policy-oriented decisions, they apply the broader view that the discretionary function encompasses decisions that are not ministerial, as *Williams* recently noted. *Williams*, 450 P.3d at 345. We believe that broader view adheres more closely to the plain language of the statute which immunizes the government from liability for "any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty." K.S.A. 75-6104(e).

With that general overview of the law, we examine the guidelines that Henderson asserts preclude Grimes' exercise of discretion. The first page of the FHRS guidelines affords officers the discretion to modify the procedures when they find it necessary. The introductory "Definition of a High Risk Stop" section states that the guidelines are general guidelines only that the officers may need to modify on a case-by-case basis:

> "When a police officer has a reasonable belief that a motor vehicle to be stopped
> contains an individual(s) that fall into this category the officer must employ a set of

19

tactics substantially different from those used in a low/unknown risk stop. The officer's reasonable belief can be based on the officer's observations, official communications (radio broadcast, etc.) and other sources of reliable information (reliable informant, civilian witness). *You should consider the procedure outlined here as a general guideline only. You may at times find it necessary to modify these procedures in order to accommodate your particular and unique situation. If you are forced to modify these procedures, think before you act and use logic.*" (Emphasis added.)

The FHRS guidelines thus broadly describe an officer's actions in this kind of stop as highly discretionary.

Henderson recognizes that the FHRS guidelines are not set in stone, but he still argues that they required Grimes to keep his distance from Henderson's vehicle and to wait for backup before approaching Garcia—an armed suspect. Henderson alleges that Grimes negligently followed Garcia too closely, provoking Garcia to force Henderson to stop driving, and provoking Garcia to fire at Grimes. True, the guidelines say to "[m]aintain a safe surveillance distance." And Grimes may not have done that, as it is uncontroverted that he closely followed the suspect's car before it stopped. But Henderson fails to point to any causal connection between Grimes' close following of Henderson's pickup truck before it stopped and Henderson's injury. The district court correctly rejected this "provocation" theory as inconsistent with negligence principles.

It is the stop and the events that followed the stop that provide any basis for liability. Henderson admits that when he stopped his pickup truck, without Grimes having used his emergency lights or siren, Grimes stopped roughly 75 feet away. But this distance did not violate the FHRS distance guidelines, which state:  "Depending on the location you want to be a minimum of 25' to 35' (1 ½ - 2 ½ car lengths behind the suspect's vehicle when you stop. Remembering that distance is our ally, the more distance, the safer you will be." And that paragraph concludes by saying:  "Remember to

20

use your best judgment for the situation you are in." So this guideline, which Grimes complied with, leaves some discretion to the officers.

Henderson's primary claim is that Grimes was negligent by not waiting for backup to arrive. But the guidelines do not require Grimes to do so. Instead, the guidelines "*recommend*[] that a minimum of three officers are needed to effectively perform a High Risk Stop." (Emphasis added.) And that same paragraph notes that a lone officer could be forced to make the stop without backup, acknowledging the flexibility of the recommendation:

> "If a lone officer is forced to make the stop then he should wait until additional officers arrive before initiating any further tactics. The officer will want to contain and isolate the suspect(s) in the vehicle until backup arrives. Your *Verbal Commands* will establish contact and control over the suspects."

And even this guideline does not dictate what a lone officer *must* do in a felony high risk vehicle stop—it merely states what he *should* do. As our courts have repeatedly held, the word *should* is less of an imperative than must or will. That word is advisory, not compulsory. See *State v. Smith-Parker*, 301 Kan. 132, 164, 340 P.3d 485 (2014); *State v. Pennington*, 254 Kan. 757, 764, 869 P.2d 624 (1994).

> "Unlike the words 'must,' 'shall,' and 'will,' the word 'should' does not express a mandatory, unyielding duty or obligation; instead, it merely denotes the proper course of action and encourages following the advised path." *State v. Allen*, 52 Kan. App. 2d 729, Syl. ¶ 5, 372 P.3d 432 (2016).

These and other guideline provisions support the district court's factual finding that the FHRS guidelines are "only guidelines." They do not dictate the specific actions Grimes was required to take throughout the stop. Henderson's expert appeared to concede as much in testifying that the FHRS guidelines establish "best practices" for officers.

21

Discretionary function immunity under the KTCA comes into play when a government actor makes a choice among discretionary options in addressing a given set of circumstances.

"Discretion implies the exercise of discriminating judgment within the bounds of reason. *Sanford v. Smith*, 11 Cal. App. 3d 991, 1000, 90 Cal. Rptr. 256 (1970). It involves the choice of exercising of the will, of determination made between competing and sometimes conflicting considerations. Discretion imparts that a choice of action is determined, and that action should be taken with reason and good conscience in the interest of protecting the rights of all parties and serving the ends of justice." *Hopkins*, 237 Kan. at 610.

Grimes made such choices here—those choices led to Henderson's injury. Grimes did not know how far away backup was or when they would arrive. He could have chosen to remain in his patrol car until backup arrived, but that would have permitted Garcia's likely escape and potential injury of others. And Grimes could have chosen not to return suppressive fire while lying on his back, on the ground, in plain view of the fleeing felon shooting at him, but that would have meant the certain sacrifice of his own safety and the potential sacrifice of his own life. Grimes understood that serious consequences would flow from whatever decision he made. His decisions reflect a course of conduct grounded in legitimate options requiring an exercise of reasonable judgment to select one option over the others. See *Hesler v. Osawatomie State Hospital*, 266 Kan. 616, 633, 971 P.2d 1169 (1999).

These are precisely the kind of decisions that the Legislature intended to place beyond judicial review. Because this kind of stop necessarily involves high risk, a myriad of situations, and rapidly changing circumstances, the procedural guidelines for these stops permit a broad range of discretion. The FHRS guidelines leave room for individual decision making, exercise of judgment, and use of skill. They do not create a clearly

22

defined mandatory duty or guideline rendering the discretionary function exception inapplicable. Because Henderson's negligence claims arise from Grimes' discretionary acts, the district court properly found that Appellees are protected from liability by K.S.A. 75-6104(e).

In light of this ruling, Henderson's other issues raised on appeal are moot.

Affirmed.